In the Matter of the ARBITRATION BETWEEN MONEGASQUE DE RE-ASSURANCES S.A.M. (Monde Re), Petitioner–Appellant,

v.

NAK NAFTOGAZ OF UKRAINE and State of Ukraine, Respondents–Appellees.

Docket Nos. 01–7947, 01–9153.

United States Court of Appeals, Second Circuit.

Argued: April 29, 2002.

Decided: Nov. 15, 2002.

490

Michael O. Hardison, Eaton & Van Winkle, New York, N.Y. (Alan Van Praag, Eaton & Van Winkle, New York, NY, of counsel), for Petitioner–Appellant.

Martin Mendelsohn, Verner, Liipfert, Bernhard, McPherson & Hand, Washington, DC (James A. Shifren, Stroock & Stroock & Lavan, LLP, New York, NY, Orlando E. Vidal, Thomas R. Snider, Verner, Liipfert, Bernhard, McPherson & Hand, Washington, DC, Myroslaw Smorodsky, Smorodsky & Stawnchy, P.A.,

Rutherford, NJ, of counsel), for Respondent–Appellee Nak Naftogaz of Ukraine.

John S. Willems, White & Case LLP, New York, NY (Alycia Regan Benenati, White & Case LLP, New York, NY, of counsel), for Respondent–Appellee State of Ukraine.

Before: MINER and SACK, Circuit Judges, and BERMAN, District Judge.*

MINER, Circuit Judge.

Petitioner-appellant Monegasque De Reassurances S.A.M. ("Monde Re"), a reinsurer, appeals from a judgment entered in the United States District Court for the Southern District of New York (Marrero, J.), in favor of respondents-appellees Nak Naftogaz of Ukraine ("Naftogaz"), a transporter of natural gas, and State of Ukraine ("Ukraine"), a foreign sovereign. Monde Re instituted the proceeding giving rise to this appeal to confirm an arbitration award made in its favor. The petition for confirmation invoked the provisions of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T. 53 ("Convention"), as implemented by and reprinted in the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–208, to enforce the arbitral award, which was rendered in Moscow. The petition also invoked the provisions of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–1611. Relying on the doctrine of forum non conveniens, the district court dismissed the petition, and this appeal followed. As in the district court, Monde Re here contends that the terms of the Convention preclude application of the doctrine and that the elements of the doctrine have not been established in any

event. We affirm the judgment of the District Court.

## BACKGROUND

The dispute between the parties had its genesis in a contract entered into on January 16, 1998 between AO Gazprom, a Russian company, and AO Ukragazprom, a Ukrainian company. The contract provided for Ukragazprom to transport natural gas by pipeline across the Ukraine to various destinations in Europe. As consideration, Ukragazprom was entitled to withdraw 235 million cubic meters of natural gas. According to Gazprom, additional unauthorized withdrawals were made, giving rise to a breach of contract. Gazprom sought and received reimbursement for the value of the improperly withdrawn gas from its insurer, Sogaz Insurance Company ("Sogaz"). Sogaz in turn was reimbursed by Monde Re pursuant to a reinsurance agreement. Monde Re is a corporation organized under the laws of Monaco with a parent company in Australia, Reinsurance Australia Corp. Ltd.

Asserting the right to pursue arbitration of the dispute regarding the excessive gas withdrawal in the place of Gazprom, and in accordance with the transportation contract, Monde Re filed its claim against Ukragazprom with the International Commercial Court of Arbitration in Moscow, Russia on April 21, 1999. In July 1999, Naftogaz assumed the rights and obligations of Ukragazprom under the contract. The dispute was presented to three arbitrators, who filed a decision on May 31, 2000 by a vote of two to one awarding in excess of 88 million dollars to Monde Re for the payment it made to Sogaz. Naftogaz appealed the decision of the arbitrators to the Moscow City Court. In its appeal to the Moscow City Court, Nafto-

---

* The Honorable Richard M. Berman, District Judge of the United States District Court for the Southern District of New York, sitting by designation.

gaz sought cancellation of the award on the following grounds: that the dispute was not covered by an agreement to arbitrate because neither Monde Re nor Naftogaz was a party to the gas transportation contract; that the International Commercial Court of Arbitration staff did not meet the requirements of the contract; and that the arbitral ruling was not in accordance with the public policy of Russia. In a ruling issued March 21, 2001, the Moscow City Court declined to cancel the award. That ruling was affirmed by the Supreme Court of the Russian Federation on April 24, 2001.

On September 12, 2000, prior to the rulings of the Moscow City Court and the Supreme Court of the Russian Federation, Monde Re filed its petition for confirmation of the arbitral award in the United States District Court for the Southern District of New York. In its petition, Monde Re sought confirmation and judgment against Ukraine, which was not a party to the arbitration proceeding, as well as against Naftogaz, contending that Naftogaz was an agent, instrumentality or alter ego of Ukraine. Three causes of action were pleaded in the petition filed in the district court. The first is based on the arbitral award and seeks confirmation of the award and entry of judgment against Naftogaz; the second is based on the contention that Ukraine wholly controls Naftogaz and is responsible for its obligations under the award and seeks confirmation and judgment against Ukraine; and the third, grounded in the allegation that Ukraine and Naftogaz acted as joint venturers, also seeks confirmation and judgment against Ukraine.

On January 22, 2001, Naftogaz moved for dismissal of the petition in the district court for lack of personal jurisdiction, asserting that it is a Ukrainian company, that it has no contacts with the United States or New York, and that the gas transmission contract and all events leading to the arbitral award occurred in Ukraine and neighboring countries.

On the same date, Ukraine separately moved for dismissal of the petition, contending that the district court was without subject matter or personal jurisdiction because Ukraine is immune from suit under the FSIA as a foreign state; that the district court should decline jurisdiction under the doctrine of forum non conveniens; and that Monde Re has failed to state a claim upon which relief could be granted against Ukraine.

By decision and amended order dated December 4, 2001, the district court granted Ukraine's motion to dismiss Monde Re's petition on the ground of forum non conveniens and ordered the removal from its docket of the motion by Naftogaz by reason of mootness. *See Matter of the Arbitration Between Monegasque de Reassurances, S.A.M. ("Monde Re") v. NAK Naftogaz of Ukraine, State of Ukraine,* 158 F.Supp.2d 377, 387–88 (S.D.N.Y.2001). In its opinion, the district court first addressed the question of the applicability of the doctrine of forum non conveniens to the so-called arbitration exception of the FSIA. The court noted that it was well settled, prior to the enactment of the exception, that the doctrine was applicable to cases arising under the FSIA. *Id.* at 382. The amendment to the FSIA enacting the arbitration exception, in the words of the district court states that a party may bring an action or may confirm an award made pursuant to an agreement to arbitrate between a sovereign state and a private party if the award is or may be governed by a treaty or other international agreement in force in the United States calling for the recognition and enforcement of arbitral awards. *Id.* (citing 28 U.S.C. § 1605(a)(6)).

Observing that the Convention was just the type of treaty contemplated by the arbitration exception, the district court stated that "it would be highly peculiar if the practical inclusion of chapter two of the FAA [implementing the Convention] into the FSIA somehow worked to alter the apparently comparable harmony between the FSIA and the forum non conveniens doctrine." *Id.* at 383. The district court took note of the Convention provision that allows for application of the procedural rules of the forum and determined that the forum non conveniens doctrine is "more procedural than substantive" and therefore "that the Convention cannot be read as affecting the discretion of federal courts to decline jurisdiction where judicial economy, convenience and justice so compel." *Id.*

The district court recognized Monde Re's argument that, because the Convention allows for the enforcement of an arbitral award in any signatory state, Ukraine has accepted the United States as a convenient forum. That argument, according to the district court, "read[ ] too much into the language and purpose of the Convention," it being "simply unreasonable to say that the Convention intended, without explicit language to that effect, to invalidate wholesale portions of federal common law and procedural doctrine." *Id.* The district court thought that, to permit enforcement of an award in a forum that had no connection to the dispute or to the place of arbitration, would discourage the use of arbitration provisions in international commercial agreements and therefore "might chill international trade." *Id.*

Finding that the doctrine of forum non conveniens is applicable to cases arising under the Convention, the district court went on to apply the doctrine to the case at hand. The court first found that Ukraine was an adequate alternative forum despite some evidence of corruption in that nation and some opinion that a fair hearing would not be afforded in its courts to a claim that was brought against the nation itself or one of its entities. The court concluded that Monde Re's allegations in regard to impartiality and corruption were "conclusory" and consisted of "sweeping generalizations." *Id.* at 384–85. The court then applied the factors governing challenges to the convenience of a forum identified in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and found that the factors "tilt strongly in favor of the alternative forum." *Monde Re,* 158 F.Supp.2d at 386.

After noting that Monde Re is a foreign petitioner and thus not entitled to the "standard deference" accorded to a petitioner's choice of forum, the district court examined the private interest factors described in *Gilbert. Id.* In "conclud[ing] that the balance of private interest factors weighs heavily in favor of dismissal," the district court found, among other things, that "pro[of] that Ukraine is responsible for Naftogaz's actions" would require extensive discovery and an evidentiary hearing when the necessary witnesses are not within the court's subpoena power and the necessary documents are written in the Ukrainian language. *Id.* Assessing the public interest factors, the court found that "Ukraine has a great interest in applying its own laws, especially with respect to establishing the ownership interest of Naftogaz." *Id.* at 387. That factor and the other public interest factors examined led the district court to "conclude[ ] that public interest concerns also weigh heavily in favor of dismissal of the case." *Id.*

## DISCUSSION

I. *Of the Convention and the Contentions of Monde Re in Regard to the Liability of Ukraine*

According to the Supreme Court,

[t]he goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

*Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974).

In furtherance of that goal and that purpose, the Convention requires that

[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in [various provisions of the Convention].

Convention art. III.

The conditions referred to allow for denial of the enforcement of an arbitral award upon proof that: the parties to the arbitration agreement lacked capacity or the agreement was not legally valid; proper notice of the appointment of the arbitrator or of the arbitration proceedings was not given; the award deals with a matter not submitted to arbitration or beyond the scope of the submission; the arbitral authority or procedure was not agreed to by the parties; or the award was not yet binding or had been set aside or suspended in the enforcement forum. *Id.* art. V(1). Enforcement may also be refused if "[t]he subject matter of the difference was not capable of settlement by arbitration," or if "recognition or enforcement of the award would be contrary to the public policy of the signatory nation where enforcement is sought." *Id.*, art. V(2). These specified grounds for denial of enforcement are exclusive. *See* FAA, 9

U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition of the enforcement of the award specified in the said Convention."); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir.1997); *see also*, Restatement (Third) of Foreign Relations, § 488, cmt. a (1987) ("The defenses to enforcement of a foreign arbitral award set forth in [Article V of the Convention] are exclusive.")

The exclusive defenses are of course available only to stave off the enforcement of awards against those who are parties to an arbitration agreement and subject to the jurisdiction of a United States Court. The FSIA provides for enforcement jurisdiction here over foreign states that have agreed to submit to arbitration their disputes with private parties where "the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6)(B). For the purposes of the FSIA, a foreign state includes an instrumentality or agency of a foreign state. *See id.* § 1603(a)-(b). The Convention is a treaty that calls for recognition and enforcement of arbitral awards and provides in the following terms for jurisdiction in each of the nations that are signatories:

Each Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon.

Convention art. III.

Since Ukraine is not party to an arbitration agreement with Monde Re or its predecessor in interest, Monde Re claims that the Southern District has jurisdiction over Ukraine on the basis of its close connection with Naftogaz. The contention is that Naftogaz is an alter ego or an agent or a

joint venturer with Ukraine. Monde Re asserts that "Ukraine [is] accountable for the obligations arising out of the arbitral award because of the extensive control Ukraine exercises over Naftogaz and the identity of interest between Naftogaz and Ukraine." Indeed, Monde Re provides the district court with the legal opinions of Professor Peter B. Maggs and Professor William Elliott Butler, as well as various evidentiary materials attesting to its contentions. Ukraine, on the other hand, has provided the opinions of Professors Nataliya Kongnetsova and Avgust A. Rubanov, Former Justice Volodymyr Kortonuk, and other evidentiary materials contradicting Monde Re's contentions in regard to the status of Naftogaz as the alter ego of Ukraine.

We have recognized certain theories under which a non-signatory party may be bound by an arbitration agreement and thus subject to the jurisdiction of the court in proceedings to compel arbitration or confirm an arbitration award.

Those theories arise out of common law principles of contract and agency law. Accordingly, we have recognized five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.

*Thomson–CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.1995); *see also Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 133 (2d Cir.1997) (applying veil-piercing analysis); *Matter of the Arbitration Between Interbras Cayman Co. v. Orient Victory Shipping Co.,* 663 F.2d 4, 7 (2d Cir.1981) (per curiam) (remanding for trial of the principal-agent issue).

For the reasons that follow, we do not address the substantive contentions of Monde Re.

## II. *Of the Applicability of the Doctrine of Forum Non Conveniens to a Proceeding to Confirm an Arbitral Award Under the Convention*

■ Monde Re's principal contention on appeal is that the doctrine of forum non conveniens cannot be applied to a proceeding to confirm an arbitral award pursuant to the provisions of the Convention. This contention rests upon the Convention's requirement that each signatory must recognize arbitral awards "and enforce them in accordance with the rules of procedure of the territory where the award is relied upon," Convention art. III, subject only to the seven exclusionary defenses to enforcement previously described. Those defenses are encompassed within the phrase "conditions laid down in the following articles." *Id.* Since the United States is a signatory, and since forum non conviens is not one of the defenses listed, Monde Re argues that a United States Court must recognize and enforce any foreign arbitral award as a treaty obligation of the United States, without any consideration given to whether the court is a convenient forum for the enforcement proceeding.

As noted above, however, the proceedings for enforcement of foreign arbitral awards are subject to the rules of procedure that are applied in the courts where enforcement is sought. The only exception is that there may not be imposed "substantially more onerous conditions ... than are imposed on the recognition or enforcement of domestic arbitral awards." *Id.* The Supreme Court has classified the doctrine of forum non conveniens as "procedural rather than substantive," *Am. Dredging Co. v. Miller,* 510 U.S. 443, 453, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994), and it cannot be disputed that the doctrine is applied in the United States Courts in the enforcement of domestic arbitral awards.

Monde Re returns to Article III of the Convention as the basis for its assertion that the procedural rules of the forum to be applied are limited by "the conditions laid down" provision, again referring to the exclusive defenses listed in Article V. According to Monde Re, to the extent that the procedural rules of the forum are inconsistent with the "conditions laid down," they may not be applied. But the items listed in Article V as the exclusive defenses—lack of capacity or invalidity; improper notice of appointment of arbitrator or proceedings; matters not submitted or beyond the scope of arbitration; arbitral authority not agreed to; award not binding; differences not susceptible to arbitration; and enforcement contrary to public policy—pertain to substantive matters rather than to procedure.

It seems clear, moreover, that the drafters of the Convention, by allowing for the application of "the rules of procedure where the award is relied upon," Convention art. III, contemplated that different procedural rules would be applied in the courts of the various signatory nations. The only limitation in this regard was the requirement that the procedures applied in foreign cases would not be substantially more onerous than those applied in domestic cases. This determination to apply the various procedural rules relied upon by the courts of the several signatory nations where enforcement was to be sought was reached only after proposals were made to establish uniform standards. *See* Leonard V. Quigley, *Accession by the United States to the United Nations Convention on the Recognition & Enforcement of Foreign Arbitral Awards,* 70 Yale L.J. 1049, 1065 (1961). "A counterproposal was made by Belgium that the same rules of local procedure be made applicable to foreign and domestic awards. The delegate from the United States supported this proposal, citing the success of the 'principle of national treatment' in recent United States bilateral treaties." *Id.* The Belgian proposal was modified to include the "substantially more onerous" language set forth in Article III. It therefore seems clear that "the Contracting States have been left free to establish *different procedures* for the recognition and enforcement of foreign awards and domestic awards, within the limits of the 'substantially more onerous conditions' rule." *Id.* (emphasis added).

■ Accordingly, Monde Re's argument that Article V of the Convention sets forth the only grounds for refusing to enforce a foreign arbitral award must be rejected. The signatory nations simply are free to apply differing procedural rules consistent with the requirement that the rules in Convention cases not be more burdensome than those in domestic cases. If that requirement is met, whatever rules of procedure for enforcement are applied by the enforcing state must be considered acceptable, without reference to any other provision of the Convention. The doctrine of forum non conviens, a procedural rule, may be applied in domestic arbitration cases brought under the provisions of the Federal Arbitration Act, *see, e.g., Matter of Arbitration Between Maria Victoria Naviera, S.A. v. Cementos Del Valle, S.A.,* 759 F.2d 1027, 1031 (2d Cir.1985), and it therefore may be applied under the provisions of the Convention.

In addition, we reject Monde Re's contention that the application of the doctrine of forum non conviens flouts the intent of the Convention and runs the risk of invalidating its purpose. In rejecting this contention, we can do no better than to repeat the reasoning of the learned district judge:

> Forcing the recognition and enforcement in Mexico, for example, in a case of an arbitral award made in Indonesia, where the parties, the underlying events

and the award have no connection to Mexico, may be highly inconvenient overall and might chill international trade if the parties had no recourse but to litigate, at any cost, enforcement of arbitral awards in a petitioner's chosen forum. The Convention was intended to promote the enforcement of international arbitration so that businesses would not be wary of entering into international contracts. It would be counterproductive if such an application of the Convention gave businesses a new cause for concern.

*Monde Re,* 158 F.Supp.2d at 383.

■ The procedural rule known as forum non conveniens finds its roots in the inherent power of the courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). "The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Although the Convention establishes jurisdiction in the United States as a signatory state through a venue statute appended to the Federal Arbitration Act, *see* 9 U.S.C. §§ 203, 204, there remains the authority to reject that jurisdiction for reasons of convenience, judicial economy and justice.

### III. *Of the Failure of the District Court to First Address the Question of Jurisdiction*

■ The district court in the case at bar failed to address the jurisdictional issue raised by Ukraine's motion, proceeding instead to the forum non conviens issue raised in that same motion. We think that it was acceptable for the district court to do so. Although it is true that the first question for an appellate court ordinarily is that of its jurisdiction and the jurisdiction of the lower court in the cause under review, even if the parties agree that jurisdiction exists, *cf. Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934), the Supreme Court has acknowledged that some of its precedents have "diluted the absolute purity of the rule that Article III jurisdiction is always an antecedent question." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

However, the Court has made clear its disapproval of so-called hypothetical jurisdiction—the assumption of jurisdiction for the purpose of deciding the merits—in cases where a court would "resolve contested questions of law when its jurisdiction is in doubt." *Id. Steel Co.* itself implicated a constitutional issue, and the Court was specific to say that jurisdiction must first be established in such a case because "[f]or a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Id.* at 101–02, 118 S.Ct. 1003.

We have read the *Steel Co.* decision as "barr[ing] the assumption of 'hypothetical jurisdiction' only where the potential lack of jurisdiction is a constitutional question." *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 816 n. 11 (2d Cir.2000). Indeed, we have gone so far as to hold that where "a governmental provision is challenged as unconstitutional, and a controlling decision of this Court has already entertained and rejected the same constitutional challenge to the same provision, the Court may dispose of the case on the merits without addressing a novel question of jurisdiction." *Ctr. for Reprod. Law & Policy v. Bush,* 304 F.3d 183, 195 (2d Cir.2002).

Applying *Steel Co.* as well as our precedents, we are not first required to pass on the question of jurisdiction in this case. Whether the Convention or the FSIA is invoked by Monde Re as a basis for jurisdiction here, Ukraine's challenge to jurisdiction revolves around statutory requirements, and no constitutional issue is presented. Accordingly, neither we nor the district court are barred from passing over the question of jurisdiction and going directly to the forum non conveniens issue raised by Ukraine. Moreover, we agree with the following analysis put forth by our sister circuit in the District of Columbia:

> Forum non conveniens does not raise a jurisdictional bar but instead involves a deliberate abstention from the exercise of jurisdiction.... While such abstention may appear logically to rest on an assumption of jurisdiction, ... it is as merits-free as a finding of no jurisdiction. By the same principle on which the [Supreme] Court has approved a discretionary declination to exercise a pendent jurisdiction that may not have existed, ... it would be proper to dismiss on such grounds (if meritorious) without reaching the FSIA issue. Similarly, dismissal for want of personal jurisdiction is independent of the merits and does not require subject-matter jurisdiction.

*In re Minister Papandreou,* 139 F.3d 247, 255–56 (D.C.Cir.1998) (footnote omitted).

## IV. *Of the Application of the Doctrine of Forum Non Conveniens In This case*

### A. *Of the Standard of Review*

█ █ We review a district court's dismissal on forum non conveniens grounds for a clear abuse of discretion. *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1232 (2d Cir. 1996). A district court abuses its discretion when "(1) its decision rests on an error of law ... or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon, N.Y., Inc.,* 252 F.3d 163, 169 (2d Cir.2001) (footnote omitted).

### B. *Of Deference to the Forum Selected and the Adequacy of the Alternate Forum.*

█ The "first level of inquiry" in a forum non conveniens analysis is to determine what deference is owed a plaintiff's choice of forum. *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 73 (2d Cir.2001) (en banc). A domestic petitioner's choice of its home forum receives great deference, while a foreign petitioner's choice of a United States forum receives less deference. We measure the degree of deference on a "sliding scale," *id.* at 71, and

> the more it appears that the [petitioner's] choice of a U.S. forum was motivated by forum-shopping reasons—such as ... the inconvenience and expense to the [respondent] resulting from litigation in that forum—the less deference the [petitioner's] choice commands, and, consequently, the easier it becomes for the [respondent] to succeed on a forum non conveniens motion by showing that convenience would better be served by litigating in another country's courts.

*Id.* at 72. On the other hand, "the greater the [petitioner's] or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the [respondent] to gain dismissal for forum non conveniens." *Id.* (footnote omitted).

■ While the motivation of Monde Re for bringing its enforcement proceeding in the United States is not apparent, it is clear that the jurisdiction provided by the Convention is the only link between the parties and the United States. Moreover, as will be demonstrated, there would be great inconvenience in litigating in the United States the complex issues involved in this case. Accordingly, little deference need be given to the petitioner's choice of forum in this case.

■ Our next inquiry in the forum non conveniens analysis is to determine whether an alternative forum exists. *Id.* at 73. A forum non conveniens motion may not be granted unless an adequate alternate forum exists. *Id.* An alternative forum is ordinarily adequate if the defendants are amenable to service of process there and the forum permits litigation of the subject matter of the dispute. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Monde Re argues that Ukraine is an inadequate alternative forum because of general corruption in the body politic of that nation. But very little has been put forward to indicate the type of widespread corruption in the courts as claimed by Monde Re.

We have been reluctant to find foreign courts "corrupt" or "biased." *See, e.g., Blanco v. Banco Indus. de Venezuela, S.A.,* 997 F.2d 974, 981–82 (2d Cir.1993) (finding Venezuela to be an adequate alternative forum despite claims of systematic corruption and bias in favor of defendants). We agree with the district court that the meager and conclusory submissions of Monde Re do not permit us "to pass value judgments on the adequacy of justice and the integrity of [Ukraine's] judicial system on the basis of no more than [those] bare denunciations and sweeping generalizations." 158 F.Supp.2d at 384–5. We similarly reject the materials presented in Monde Re's "Supplemental Appendix" as a basis for any conclusion that the courts of Ukraine constitute an inadequate alternative forum. Moreover, Gazprom, the Russian company to which Monde Re is subrogated, voluntarily conducted business with Ukragazprom, a Ukrainian company, and must have anticipated the possibility of litigation in Ukraine. This simply is not a case where the alternative forum is characterized by a complete absence of due process or an inability of the forum to provide substantial justice to the parties. *See, e.g., Rasoulzadeh v. Associated Press,* 574 F.Supp. 854, 861 (S.D.N.Y.1983), *aff'd,* 767 F.2d 908 (2d Cir.1985) (mem.).

Monde Re's contention that a Ukrainian forum is not an adequate forum simply because a state-owned enterprise of Ukraine is involved also must be rejected as without foundation. It is hardly unusual, considering the number of state-owned business entities throughout the world, for a finding of forum non conveniens to be made in favor of the forum of a state whose entity is a party litigant. *See, e.g., Forsythe v. Saudi Arabian Airlines Corp.,* 885 F.2d 285 (5th Cir.1989) (dismissing action against state-owned corporation in favor of Saudi Arabian forum). Moreover, Monde Re's contention that a Ukrainian forum is inadequate because execution on the assets of Ukraine or Naftogaz would not be possible is also without support. We agree with the district court that Monde Re's mere assertion that Ukrainian law "has on the whole followed Soviet legal doctrine" in this regard constitutes speculation insufficient to defeat a finding of an adequate alternative forum. Furthermore, as noted by the district court, it appears that Ukrainian law specifically provides for the execution of judgments against government properties. 158 F.Supp.2d at 386.

## C. Of the Private and Public Interest Factors

■ A district court is constrained to balance two sets of factors in determining whether there should be an adjudication in a petitioner's chosen forum or in the alternative forum suggested by the respondent. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). One set of factors, known as the private interest factors, pertains to the convenience of the litigants—"the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508, 67 S.Ct. 839. In applying these factors, "the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues." *Iragorri*, 274 F.3d at 74.

■ While the private interest factors might not ordinarily weigh in favor of forum non conveniens dismissal in a summary proceeding to confirm an arbitration award, this case does not lend itself to summary disposition. Here, Monde Re has brought Ukraine into the proceeding although Ukraine was not a party to the agreement providing for arbitration. As noted in Part II above, there are various theories under which a non-signer of an arbitration agreement may be bound by it. However, to cast Ukraine into liability under any one of these theories requires extensive discovery and, most probably, a trial of the factual issues implicating and establishing such non-signer liability. The evidence required for inquiries of this nature is not to be found in the United States. It appears that witnesses are beyond the subpoena power of the district court, that the pertinent documents are in the Ukrainian language and that enforcement or satisfaction of the arbitral award would not be easier here than in Ukraine. Indeed, the entire proceeding would be more "easy, expeditious and inexpensive" if conducted in Ukraine. Accordingly, we think that the private interest factors tip decidedly in favor of forum non conveniens dismissal.

■ The other set of factors to be applied in the analysis are the public interest factors. These factors include the administrative difficulties associated with court congestion; the imposition of jury duty upon those whose community bears no relationship to the litigation; the local interest in resolving local disputes; and the problems implicated in the application of foreign law. *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839. The case before us simply has no connection with the United States other than the fact that the United States is a Convention signatory. Petitioner is a citizen of Monaco, and the respondents are the State of Ukraine and a citizen of that nation. The parties to the contract giving rise to the arbitration award are citizens of Russia and Ukraine, respectively. The award itself was made by a court of arbitration in Moscow and was affirmed by the Moscow City Court and the Supreme Court of the Russian Federation.

Issues governed by the law of Ukraine as well as by Russian law already have been raised. Ukrainian courts are better suited than United States courts for the resolution of these legal questions. Especially important here is the application of Ukrainian law to the question of whether Ukraine is bound as a non-signer of the Naftogaz–Ukragazprom agreement. Court congestion is no more a problem in Ukraine than it is here, and there is no

reason why localized matters should not be determined by the courts of the locale bearing the most significant contacts with them. The public interest factors also weigh in favor of dismissal, and the district court properly so concluded.

## V. *Of the Conclusion*

The judgment of the district court dismissing the proceeding giving rise to this appeal on a finding of forum non conveniens in favor of a forum in the Ukraine is affirmed in all respects.