Judge LYNCH dissents with a separate opinion.
JON 0. NEWMAN, Circuit Judge:
This is an interlocutory appeal from the denial of a motion to dismiss, primarily on the ground of forum non conveniens (“FNC”), a petition seeking confirmation of an international arbitration award. A principal public interest factor to be weighed in assessing the FNC claim is a Peruvian statute that limits the amount of money that an agency of the Peruvian government may pay annually to satisfy a judgment. The limit is three percent of the agency’s annual budget.[1] The Republic of Peru (“the Republic”), the Ministry of Housing, Construction and Sanitation (“the Ministry”), and the Programa Agua Para Todos (“the Program”) — collectively “the Appellants” — appeal from the September 8, 2009, order of the United States District Court for the Southern District of New York (William H. Pauley III, District Judge), denying their motion to dismiss an action to confirm an arbitration award in favor of Appellee Figueiredo Ferraz Consultoria E Engenharia de Projeto Ltda. (“Figueiredo”). See Figueiredo Ferraz Consultoria E Engenharia de Projeto Ltda. v. Republic of Peru, 655 F.Supp.2d 361 (S.D.N.Y.2009). The Appellants sought dismissal on several grounds, including lack of subject matter jurisdiction, FNC, and international comity. We conclude that the District Court erred in declining to dismiss on the FNC ground and therefore reverse and remand with directions to dismiss the petition.
Background
This case arises from a consulting agreement entered into by the Appellee and the *387 Program in 1997, pursuant to which the Appellee was to prepare engineering studies on water and sewage services in Peru. The agreement provides: “The parties agree to subject themselves to the competence of the Judges and Courts of the City of Lima or the Arbitration Proceedings, as applicable.” After a fee dispute arose, the Appellee commenced arbitration in Peru against the Program, and in January 2005, the arbitral tribunal rendered an award (the “Award”) directing the Program to pay the Appellee more than $21 million, which included approximately $5 million of principal damages plus accrued interest and cost of living adjustments as of the time of the award. The Ministry appealed to the Court of Appeals in Lima, challenging the Award and seeking its nullification on the ground that, under Peruvian law, the arbitration was an “international arbitration” involving a non-domestic party and, thus, recovery should have been limited to the amount of the contract. In October 2005, the Lima Court of Appeals denied the appeal, ruling that because the Appellee had designated itself a Peruvian domiciliary in the agreement and the arbitration, the arbitration was a “national arbitration” involving only domestic parties, and thus, the Award, rendered in equity, was permissible. In its pending amended petition[2] in the Southern District of New York, the Appellee alleges that it is a Brazilian corporation.
A Peruvian statute imposes, in some circumstances, a limit of three percent of the budget of a governmental entity on the amount of money the entity may pay annually to satisfy a judgment.[3] See Law No. 27584, Art. 42, as amended by Law No. 27684, currently set forth in Supreme Decree No. 013-2008-JUS, Art. 47.[4]
*388 Although the Appellee has not attempted to confirm the arbitration award in a Peruvian court or obtain and execute upon a judgment in Peru, the Program has been making payments on the Award. However, because of imposition of the statutory three percent cap, the Program’s payment at the time of briefing was just over $1.4 million.
In January 2008, the Appellee filed a petition in the Southern District to confirm the Award and obtain a judgment for $21,607,003. The petition was brought pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (“FAA”), the Inter-American Convention on International Commercial Arbitration (the “Panama Convention”), enforceable pursuant to the FAA, see id. § 301, or, alternatively, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the “New York Convention”), also enforceable pursuant to the FAA, see id. § 201. Jurisdiction was based on the FAA, 9 U.S.C. § 203, and the Foreign Sovereign Immunities Act (“FSIA”), 28 U.S.C. § 1330(b). In opposing a motion by the Appellants to dismiss, the Appellee alleged that Peru has substantial assets in New York, resulting from the sale of bonds. The Appellants acknowledge the existence of these funds. In September 2009, the District Court denied the Appellants’ motion to dismiss, which had asserted various grounds, including lack of subject matter jurisdiction under the FSIA, FNC, and international comity. The District Court ruled, among other things, that the Program and the Republic are not separate entities under Peruvian Law, see Figueiredo, 655 F.Supp.2d at 369, that Peru is therefore subject to the Award despite not having signed the consulting agreement, see id. at 367-71, that jurisdiction was proper under the FSIA, see id. at 371-72, and that dismissal was not appropriate under FNC, see id. at 374-77, the Agreement’s forum selection clause, see id. at 377, or international comity, see id. at 377-78. The Court appears not to have explicitly considered whether the three percent cap statute was relevant to any of the threshold issues it decided, and had no occasion to consider what effect, if any, that statute might have on the Appellants’ payment obligation because the Court did “not reach the ultimate question whether the Award should be confirmed.” Id. at 378.
The Appellants filed an interlocutory appeal, No. 09-3925, from the denial of them motion to dismiss, predicating appellate jurisdiction on the collateral order doctrine, which is applicable to an order denying a motion to dismiss that had sought FSIA immunity, see Kensington International Ltd. v. Itoua, 505 F.3d 147, 153 (2d Cir.2007).[5] Thereafter, pursuant to 28 U.S.C. § 1292(b), the Appellants moved for leave to appeal the Court’s determinations concerning FNC, the forum selection clause, and comity. The Court granted the motion and certified for interlocutory appeal those portions of its ruling concern *389 ing these issues. This Court then granted the Appellants’ section 1292(b) petition for an interlocutory appeal,[6] No. 10-478-cv, and consolidated Nos. 09-3925-cv and 10-478-cv. See Figueiredo v. Republic of Peru, No. 10-478 (2d Cir. Apr. 29, 2010) (order granting interlocutory appeal). After oral argument, we invited the views of the United States on “aspects of the appeal that might have implications for the conduct of the foreign relations of the United States.”[7] See Letter from Catherine O’Hagan Wolfe, Clerk of Court, to Neal Katyal, Acting Solicitor General (Oct. 29, 2010). The amicus curiae brief submitted for the United States primarily urges a remand so that the District Court can give further consideration to the issue of subject matter jurisdiction over the Republic and the Ministry. See Brief for the United States at 6-20. The brief contended that the District Court did not err in declining to dismiss on grounds of either FNC, see id. at 21-27, or international comity, see id. at 27-29. The parties have also submitted briefs commenting on the views of the United States and letters responding to this Court’s inquiry as to whether the three percent cap applies to funds of the Republic in the United States. The Appellee contends that the cap statute does not apply, see Letter from Atty. Thomas J. Hall to Catherine O’Hagan Wolfe, Clerk (June 16, 2011), a contention that the Appellants do not dispute, see Letter from Atty. Juan C. Basombrio to Catherine O’Hagan Wolfe, Clerk (June 15, 2011).
Discussion
Although courts are normally obliged to consider issues of subject matter jurisdiction prior to other issues, the Supreme Court has approved the practice of this Court, see In re Arbitration Between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488, 497-98 (2d Cir.2002); In re Minister Papandreou, 139 F.3d 247, 255-56 (D.C.Cir.1998), of exercising discretion to consider an FNC dismissal without first adjudicating issues of subject matter jurisdiction. See Sinochem International Co. v. Malaysia International Shipping Corp., 549 U.S. 422, 429-34, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007). We have concluded that it is appropriate to do so in this case.
We review a district court’s rejection of an FNC claim for abuse of discretion, but may reverse if we conclude that the court has made an error of law. Monegasque, 311 F.3d at 498.
The FNC standards concern both private and public interests. See American Dredging Co. v. Miller, 510 U.S. 443, 448, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509-09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 74 (2d Cir.1998). Among the public interests are “a local interest in having localized controversies decided at *390 home,” Gilbert, 330 U.S. at 509, 67 S.Ct. 839, and the interest in having foreign law interpreted by a foreign court, see PT United Can, 138 F.3d at 74.
In the pending case, the District Court recognized that although the Panama Convention establishes jurisdiction in the United States, “ ‘there remains the authority to reject that jurisdiction for reasons of convenience, judicial economy and justice.’ ” Figueiredo, 655 F.Supp.2d at 374-75 (quoting Monegasque, 311 F.3d at 497). The Court then appropriately gave somewhat reduced deference to the foreign plaintiffs choice of forum, id. at 375 (citing Monegasque, 311 F.3d at 498), and considered several private and public interest factors, see id. at 376-77.
In considering the factor of the adequacy of an alternative forum, the District Court concluded that although Peruvian law permits execution of arbitral awards, “only a United States court ‘may attach the commercial property of a foreign nation located in the United States,’ ” id. at 375-76 (quoting TMR Energy Ltd. v. State Property Fund of Ukraine, 411 F.3d 296, 303 (D.C.Cir.2005)). In deeming a Peruvian forum inadequate for the stated reason, we think the District Court erred. It is no doubt true that only a United States court may attach a defendant’s particular assets located here, but that circumstance cannot render a foreign forum inadequate. If it could, every suit having the ultimate objective of executing upon assets located in this country could never be dismissed because of FNC. Yet in Monégasque, to cite a recent example, we upheld an FNC dismissal in favor of suit abroad even though the plaintiff had obviously sought a judgment in the United States in order to execute upon a foreign government’s assets here.[8]
“An alternate forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute.” Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir.2003) (citing *391 Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n. 11, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). Where adequacy of an alternative forum is assessed in the context of a suit to obtain a judgement and ultimately execution on a defendant’s assets, the adequacy of the alternate forum depends on whether there are some assets of the defendant in the alternate forum, not whether the precise asset located here can be executed upon there. See Norex Petroleum Ltd. v. Access Industries, Inc., 416 F.3d 146, 158 (2d Cir.2005) (adequacy of alternate foreign forum does not depend on “identical remedies”). And the fact that a plaintiff might recover less in an alternate forum does not render that forum inadequate. See Alcoa Steamship Co. v. M/V Nordic Regent, 654 F.2d 147, 159 (2d Cir.1980) (alternate forum not inadequate although plaintiff might recover only $570,000 there, rather than $8 million in the United States). To the extent that the District of Columbia Circuit in TMR Energy considered a foreign forum inadequate because the foreign defendant’s precise asset in this country can be attached only here, we respectfully disagree.[9]
The parties recognize that public interest factors are to be considered in determining whether an FNC dismissal is appropriate. See Gilbert, 330 U.S. at 508-09, 67 S.Ct. 839; Iragorri v. United Technologies Corp., 274 F.3d 65, 73-74 (2d Cir.2001). The Appellants contend that the cap statute is a relevant, perhaps decisive, public factor to be weighed in the discretionary FNC decision. The Appellee responds that the cap statute cannot warrant FNC dismissal because “such laws are contrary to the United States’ public policy in favor of international arbitration.” Brief for Appellee at 63.
The parties are similarly at odds with respect to international comity, which is the “recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or other persons who are under the protection of its laws.” Hilton v. Guyot, 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895); see JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V., 412 F.3d 418, 423 (2d Cir.2005). The Appellants point out that a conflict between domestic and foreign law is an important criterion for a comity dismissal, see Hartford Fire Insurance Co. v. California, 509 U.S. 764, 798, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993); In re Maxwell Communication Corp., 93 F.3d 1036, 1047-48 (2d Cir.1996), and contend that enforcement of the Award in the United States cannot be achieved without disregarding Peru’s cap statute. The Appellee responds that comity considerations, just like FNC considerations, do not warrant dismissal on the ground of comity in view of the strong United States policy favoring the enforcement of foreign arbitral awards, *392 as made manifest by adherence to the Panama Convention.
We agree with the Appellants that the cap statute is a highly significant public factor warranting FNC dismissal. Although it obviously has special significance for one of the parties in this litigation, Peru, and to that extent differs from public factors such as court congestion, see Gilbert, 330 U.S. at 508, 67 S.Ct. 839, which are independent of particular litigants, there is nonetheless a public interest in assuring respect for a sovereign nation’s attempt to limit the rate at which its funds are spent to satisfy judgments.[10]
In the somewhat similar context of abstention, the Supreme Court has observed that deferring to litigation in another jurisdiction is appropriate where the litigation is “intimately involved with sovereign prerogative” and it is important to ascertain the meaning of another jurisdiction’s statute “from the only tribunal empowered to speak definitively.” Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 28-29, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). The rate at which public funds may be disbursed to satisfy public obligations is surely “intimately involved with sovereign prerogative” and the Peruvian courts are “the only tribunals] empowered to speak authoritatively” on the meaning and operation of the cap statute.
With the underlying claim arising (1) from a contract executed in Peru (2) by a corporation then claiming to be a Peruvian domiciliary (3) against an entity that appears to be an instrumentality of the Peruvian government, (4) with respect to work to be done in Peru, the public factor of permitting Peru to apply its cap statute to the disbursement of governmental funds to satisfy the Award tips the FNC balance decisively against the exercise of jurisdiction in the United States.
Despite these private and public factors favoring an FNC dismissal, Figueiredo contends that FNC dismissal is not warranted because of the interest of the United States favoring enforcement of arbitration agreements in international contracts, see Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), and the provision of the Panama Convention authorizing enforcement of international arbitration awards. See Panama Convention, Art. 4, Jan. 30, 1975, O.A.S.T.S. No. 42. Although enforcement of such awards is normally a favored policy of the United States and is specifically contemplated by the Panama Convention, that general policy must give way to the significant public factor of Peru’s cap statute. Moreover, Article 4 of the Convention explicitly provides that execution of international arbitration awards “may be ordered ... in accordance with the procedural laws of the country where it is to be executed ....,” and FNC is a doctrine “of procedure,” American Dredging Co. v. Miller, 510 U.S. 443, 453, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). See Monegasque, 311 F.3d at 495-96 (making same point with respect to similar wording of the New York Convention, June 10, 1958, 21 U.S.A. 2517, T.I.A.S. No. 6997, 330 U.N.T. 53.)
The District Court also said that Peru should not be able to prevail on the ground of FNC because it entered into the Panama Convention, see Figueiredo, 655 F.Supp.2d at 377, suggesting that Peru thereby assumed the risk that any award against it would be enforced in a signatory country like the United States. However, not only does the Convention contemplate *393 application of a signatory forum’s procedural doctrines, as we have pointed out, but, in our view, if comparative risks are to be assessed, Figueiredo took the more significant risk of having collection of an award subject to the cap statute when it entered into a contract with an entity that it contends is an organ of the Peruvian government.
Conclusion
For all of the reasons stated, we conclude that the petition should be dismissed on the ground of FNC.[11] We direct that *394 the dismissal should be conditioned on the Appellants’ consent to suit in the courts of Peru, including a waiver of any otherwise applicable statute of limitations,[12] and subject to the further condition that if, for any reason, the courts of Peru decline to entertain a suit to enforce the Award, this lawsuit may be promptly reinstated in the District Court.
Reversed and remanded with directions to dismiss the petition.

. Throughout the litigation, the parties have referred to the three percent provision as a “cap.” In recent correspondence to this Court, the Plaintiff-Appellee refers to it as "a maximum that an agency is required to set aside from its budget each year to pay awards and judgments.” Letter from Thomas J. Hall, Esq. to Catherine O’Hagan Wolfe, Clerk of Court (June 16, 2011) (original citation and textual alteration omitted). We will continue to refer to the provision as a "cap” or a "limit” without intending thereby to interpret its precise meaning.

. The Appellee has styled its amended petition to confirm and enforce the Award as an amended "complaint.” As the District Court correctly noted, see Figueiredo, 655 F.Supp.2d at 378, the Appellee’s pleading is more properly termed a "petition” or "motion.” See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 101, 107 (2d Cir.2006). We will refer to the Appellee's pleading ás a "petition.”

. Because the precise meaning of the statute is unclear and need not be definitively explicated in this lawsuit, we will not endeavor to state the operation of the statute with precision.

. An English language explanation of the statute was provided by Jorge Avendaño, a Peruvian lawyer and law professor. As explained by Prof. Avendaño, the statute establishes the following procedure:
"(i) Requirements to pay ordered by judges shall be attended only and exclusively by the budget division in which the debt was generated, under the responsibility of the head of the division.
"(ii) The General Office of Administration of the corresponding state entity or agency must proceed in conformity with the general mandate of the requirement and within the framework of the annual budget laws.
"(iii) In case the financing ordered by the General Office of Administration is insufficient for compliance with the sentence, the head of the division may make budget modifications within fifteen days of receiving the notification, which fact must be communicated to the corresponding jurisdictional agency.
"(iv) Should there be requirements in excess of the financing possibilities expressed above, the General Office of Administration of the corresponding sector shall inform the judicial authority of its commitment to attend to such sentences in the following budgetary exercise, to which end it is obliged to destine [sic ] up to 3% of the budgetary allotment assigned to the division by the source of ordinary resources.
The Ministry of Economy and Finances and/or the Office of Provisional Normalization, as the case may be, shall calculate the 3% referred to above, deducting the amount corresponding to the allotment for the payment of service to the public debt, the contingency reserve and the provisional obligations.
*388 "(v) When six months have lapsed since the judicial notification without the payment having been initiated or the obligation assumed in accordance with some of the procedures mentioned above, the process of execution of judicial resolutions provided for in Articles 713 et seq. of the Civil Procedures Code, which applies to individuals who must pay sums of money by judicial mandate, may be initiated. It is at this stage that the seizure of State goods may be requested, but only of the goods of private domain, since goods of public domain enjoy the immunity granted by Article 73 of the Political Constitution of Peru.

. But cf. Van Cauwenberghe v. Biard, 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988), ruling that denial of a motion to dismiss on FNC grounds is not appealable as a collateral order.

. The order stated that the petition is granted “in the interests of judicial economy so as to allow the panel which will consider the merits of the FSIA appeal, Docket No. 09-3935-cv, an opportunity, if it wants to do so, to consider the questions presented in this appeal relating to forum.” We construe the order as authorizing this panel to consider all of the issues certified for interlocutory appeal by the District Court and all matters pertinent to those issues.

. We specifically called the Government’s attention to the competing concerns that dismissal on forum non conveniens or other grounds might run counter to United States treaty obligations and that the three percent cap statute might either be a public factor warranting dismissal on the grounds of forum non conveniens or international comity.

. The Appellees contend that in Monégasque the debtor had no assets in the United States. This assertion might be based on our observation that "[t]he case before us simply has no connection with the United States other than the fact that the United States is a Convention signatory.” Monegasque, 311 F.3d at 500. That statement might be understood to refer to the dispute between the parties, which originally concerned a contract between a Russian company, AO Gazprom, and a Ukrainian company, AO Ukragazprom, and ultimately between Nak Naftogaz of Ukraine (“Naftogaz”), which assumed the rights and obligations of Ukragazprom; Monde Re, a reinsurer of Gazprom; and Ukraine. See id. at 491-92. Similar to the pending case, Monde Re contended that Naftogaz was an "agent, instrumentality or alter ego of Ukraine.” Id. at 492. Concerning assets in the United States, the District Court in Monégasque stated that although "it is not clear that Naftogaz has any assets in the United States[,] ... [t]here is no evidence before the Court [ ] to suggest that the arbitral award — if confirmed here — would be easier to enforce against Ukraine in the United States rather than in the Ukraine.” Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 158 F.Supp.2d 377, 386-87 (S.D.N.Y.2001). The first clause leaves it uncertain whether Naftogaz had any assets in the United States, but the second clause makes sense only if Ukraine had some assets in both the United States and Ukraine. The law review article that the Appellees cite for the proposition that our decision in Monégasque "note[d] an absence of identifiable property within [the United States],” William W. Park, "The Specificity of International Arbitration: The Case for FAA Reform,” 36 Vand. J. TransnatT L. 1241, 1264 (2003), Brief for Appellees at 59, misstated our position and did so by relying only on the District Court’s statement in Monégasque concerning property of Naftogaz, omitting that Court's more pertinent statement concerning enforcement against Ukraine of an award in the United States. See Park, supra, at 1264 n. 99.

. We note that the District of Columbia Circuit relied on a footnote in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419, and its own prior decision in El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 677 (D.C.Cir.1996). See TMR Energy, 411 F.3d at 303. Piper Aircraft made the unexceptional observation that an alternative forum would be inadequate if the remedy available there “is no remedy at all,” 454 U.S. at 254, 102 S.Ct. 252. Footnote 22 provided examples where the alternative forum "does not permit litigation of the subject matter of the dispute,” or where it is unclear whether the alternative forum will even hear the case. See id. at 254 n. 22, 102 S.Ct. 252. El-Fadl also noted that an alternate forum is inadequate if it does not permit litigation of the subject matter of the dispute, 75 F.3d at 677, and concluded that Jordanian law constituted an “absolute prohibition” to the plaintiff's bringing suit in Jordan, id. at 678.

. A public interest of this sort is considerably broader than the colloquial understanding of the word “convenient,” which may be one reason why the phrase forum non conveniens is best rendered in Latin.

. Judge Lynch's well argued dissent merits a brief response. First, he points out that Article V of the Panama Convention “was intended to make[ ] it clear that once the procedural requirements for enforcement are met no other grounds except those included in [Article V] may be invoked as a defense.” Dissenting op. at 396 (internal quotation marks omitted). However, we are not invoking FNC as a "defense.” Although the result of an FNC dismissal is undoubtedly a declination to accord a plaintiff the relief sought, such a dismissal is not the assertion of a defense on the merits. It simply denies relief here, leaving a plaintiff free to seek enforcement of an award elsewhere. There has been no refusal to recognize the Award.
Second, he cautions that courts should be wary of using FNC to refer enforcement plaintiffs "back to the very courts they sought to avoid.” Id. at 402. Although the parties’ contract permitted arbitration and arbitration occurred, what the parties agreed to was "to subject themselves to the competence of the Judges and Courts of the City of Lima or the Arbitration Proceedings, as applicable.” Moreover, after the Award was issued, the parties litigated in the Court of Appeals in Lima the issue of whether the arbitration was a "national arbitration” involving only domestic parties, an issue on which Figueiredo prevailed.
Third, he says we have concluded that the three-percent cap "should apply” to enforcement of the Award. Id. at 403 (emphasis in original). That overstates our view. As the dissent recognizes, we have disclaimed making any determination as to exactly how the three percent cap operates. Indeed, Figueiredo insists that there are reasons why the cap will not be applied to the payment of whatever judgment it ultimately obtains. We determine only that the existence of a statute designed to protect the rate of payment of funds of a sovereign state is a public interest factor that decisively tips the FNC balance in a case where the parties and the underlying dispute have no connection at all to this country.
Fourth, he contends that Peru is not an adequate forum because Figueiredo "comes to us with the specific and narrow intent of enforcing its arbitration award against Peru’s assets in the United States.” Id. at 405 But Figueiredo’s intent to collect the Award out of assets in this country is merely the reason it sued here; it cannot also be the reason why it is entitled to do so, at least when Peru’s assets are located in an adequate forum elsewhere.
Fifth, he appears to describe the Court’s ruling as if it were a disagreement with the District Court’s exercise of discretion in weighing the FNC factors. In fact, we consider the District Court to have committed legal errors both in deeming a Peruvian forum inadequate and in declining to consider the three-percent cap to be a public factor in the FNC balance.
Sixth, he suggests that an FNC dismissal, which might result in having payment of the award subject to the three percent cap if Figueiredo seeks to enforce the Award in Peru, amounts to "sleight of hand,” id. at 403, because a statute that does not apply here as a matter of choice of laws would apply in Peru. But there is nothing magical about that consequence, should it occur; it would be a routine consequence of any FNC dismissal. Whenever a suit is dismissed on FNC grounds in country A, where Country B’s procedural statute, like a limitation on the rate of payment of a judgment, does not apply, and the suit is refiled in country B, the procedural statute of country B applies. Foreign procedural rules normally do not apply in domestic lawsuits and normally do apply in the forum of the foreign state.
Finally, Judge Lynch points out the absence of authority for the proposition that the three percent cap is a public interest factor in the FNC balance. Since we are aware of no prior litigation in which anyone has asserted that the three percent cap or any similar statute limiting the rate of payment of a sovereign’s funds is a public interest factor in the FNC balance, it is not surprising that no court *394 has ruled on the issue — either way. Every issue has to arise somewhere for the first time.

. The Supreme Court has explicitly left open the question of whether a court dismissing on the ground of FNC without ruling on subject matter jurisdiction may condition the dismissal on waiver of jurisdictional and limitations defenses in the foreign forum. See Sinochem, 549 U.S. at 435, 127 S.Ct. 1184. Until authoritatively advised that this practice is impermissible, we will continue to approve such waivers, see Calavo Growers of California v. Generali Belgium, 632 F.2d 963, 968 & n. 6 (2d Cir.1980) (remanding FNC dismissal to be conditioned on willingness of foreign court to hear case and consent of defendants to submit to foreign court’s jurisdiction); Schertenleib v. Traum, 589 F.2d 1156, 1163 (2d Cir.1978) (FNC dismissal conditioned on consent to jurisdiction in foreign forum); cf. Bank of Credit and Commerce International (Overseas) Ltd. v. State Bank of Pakistan, 273 F.3d 241, 247 (2d Cir.2001) (recommending condition "to deal with the potentially serious problem of congestion and delay in [alternate forum’s] courts”).