UNITED STATES of America, Plaintiff–Appellant,

v.

ALL FUNDS DISTRIBUTED TO, or on Behalf of, Edward WEISS and/or Rosemary Weiss from the BR Ambulance Service, Inc. Pension Plan and All Monies and Properties Traceable Thereto, Defendants,

Edward Weiss, from the BR Ambulance Services, Inc. & Rosemary Weiss, from the BR Ambulance Services, Inc., Claimants–Appellees,

Pryor & Mandelup, L.L.P., Jacqueline Acampora & Internal Revenue Service, Claimants.

Docket No. 01–6232.

United States Court of Appeals, Second Circuit.

Argued: Sept. 9, 2002.

Decided: Sept. 17, 2003.

---

Carolyn Lisa Miller, Assistant U.S. Attorney for the Eastern District of New York (Alan Vinegrad, U.S. Attorney for the Eastern District of New York, Varuni Nelson, Arthur P. Hui, Assistant U.S. Attorneys for the Eastern District of New York, on the brief), Brooklyn, NY, for Appellant.

Kenneth J. Rubinstein, Rubinstein & Rubinstein, New York, NY, for Appellees.

Before: WALKER, Chief Judge, NEWMAN and F.I. PARKER, Circuit Judges.

F.I. PARKER, Circuit Judge *.

Plaintiff-appellant, the United States of America, appeals from the September 28, 2001 judgment of the United States District Court for the Eastern District of New York (Frederic Block, *Judge*), granting summary judgment in favor of claimants-appellees, Edward Weiss and Rosemary Weiss, in the government's forfeiture action against the proceeds of the claimants' pension plans. The district court held that the action was governed by the one year statute of limitations contained in 18 U.S.C. § 984,[1] that section 984's statute of limitations had run, and that the government was not entitled to equitable tolling. We hold that it was error for the district court to deny plaintiffs' equitable tolling of the limitations period during the time that the defendant funds were in the pension plan, and hence disagree with the ruling that section 984's statute of limitations had necessarily run. We therefore do not address the other issues ruled upon by the

---

* Judge Fred I. Parker wrote this opinion before his untimely death on August 12, 2003.

1. Since the commencement of this lawsuit, section 984 has been amended and, although the amendments have no effect on the rele- vant statutory language, the subsections have been re-lettered. In the interests of clarity, this opinion will refer to the same version of the law and its subsections as did the district court.

district court, namely, whether the funds are traceable to a criminal offense or whether, as a result of such traceability, the longer statute of limitations in another forfeiture section, 18 U.S.C. § 981(d), might also apply in this case. The judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

## I. BACKGROUND

For several years, claimants Edward Weiss and Rosemary Weiss operated BR Ambulance Services, Inc. ("BR"), a corporation engaged in the business of transporting Medicare beneficiaries to and from dialysis centers, doctors' offices, clinics and hospitals. Edward was BR's president and his wife, Rosemary, was BR's secretary-treasurer. Additionally, both claimants were directors of the corporation, and together they owned 100 percent of BR's stock.

A government investigation revealed that between 1990 and 1994, under Edward's leadership and direction, BR had improperly billed Medicare for services that were never provided. Subsequently, on August 22, 1996, Edward pleaded guilty to an information charging him with making false claims and causing false claims to be made against the United States, in violation of 18 U.S.C. § 287. The amount of money in question is significant; according to a government audit agency, Medicare fees paid to BR totaled $21,510,922, which represented two thirds of BR's total revenue, between 1990 and 1994. Of these fees, the audit agency estimated that approximately 87 percent ($18,714,502) were fraudulently obtained.

During the course of its operation, BR deposited its fraudulent Medicare proceeds into its bank accounts together with legitimate revenues, and over the course of multiple bank deposits and withdrawals, the commingled funds were utilized to run BR's business. Using these commingled funds, BR established a pension plan—the proceeds of which are here at issue—to provide retirement benefits for certain of its employees, including Edward and Rosemary. Once funded, the plan invested and reinvested the funds in various securities. Thus, the pension plan, which began in January of 1989 and continued until the corporation dissolved in 1998, was funded from accounts which contained a combination of the proceeds of Medicare fraud and legitimate BR revenue.

In July 1998, BR was dissolved as a result of a bankruptcy proceeding, and arrangements were made for the pension plan to be terminated. A standard termination notice for the pension plan was filed with the Pension Benefits Guarantee Corporation in November 1998. Several months later, when the pension plan's assets were converted to cash, $ 45,809.81 was distributed to Edward, $ 546,477.73 to Rosemary, and the remainder to BR's other employees. The payments to Edward and Rosemary were deposited into separate Individual Retirement Accounts ("IRAs") in North Fork Bank on August 19, 1999 and were seized by the government shortly thereafter.

The government acknowledges that it learned that the pension plan contained assets derived from the fraudulent Medicare claims in 1996, after BR had begun bankruptcy proceedings. However, the government did not commence its civil forfeiture action against the pension fund monies until March of 1999, when it obtained a court order authorizing the arrest and seizure of Edward and Rosemary Weiss's North Fork Bank IRA funds—the defendant property in this litigation. When the government initiated the seizure of Edward's and Rosemary's IRAs, it alleged that the funds therein were being used to

commit or facilitate the commission of violations of 18 U.S.C. § 1956(a)(1)(A)(I) (money laundering) by virtue of the funds being the proceeds of, or derived from mail and/or wire fraud (18 U.S.C. §§ 1341, 1343). Mail fraud and wire fraud are predicate crimes under the money laundering statute.[2] *See* 18 U.S.C. §§ 1956(c)(7)(C), 1961(1)(B); 21 U.S.C. § 848. The government further alleged that as a result of the foregoing, the funds were property involved in a financial transaction in violation of the money laundering statute, traceable to mail fraud and wire fraud violations, and therefore liable to forfeiture in accordance with 18 U.S.C. § 981(a)(1).[3]

In the district court, the claimants accepted the government's facts, as alleged in its complaint, but moved for summary judgment, arguing that the government's forfeiture action was governed by the one year statute of limitations contained in 18 U.S.C. § 984 and was not timely filed.[4] The district court agreed, granted the claimants' motion and dismissed the government's complaint, holding that because the subject property is fungible, the government's action was necessarily governed by the one year statute of limitations in section 984, under which the action was time-barred. The court also denied the government's alternative request that it apply equitable tolling principles in the event that it decided to apply the one year statute of limitations.

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir.2001), and construe the evidence in the light most favorable to the nonmoving party, *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d

---

**2.** When this action was filed, the Medicare fraud offense to which Edward Weiss pleaded guilty, making or causing false claims to be made in violation of 18 U.S.C. § 287, was not among the crimes enumerated in the relevant civil forfeiture statutes, *see* 18 U.S.C. §§ 981 & 984 (1994). Thus, the government alleges money laundering, in violation of 18 U.S.C. § 1956, of the proceeds of mail and wire fraud (violations of 18 U.S.C. §§ 1341, 1343). Money laundering, mail fraud and wire fraud were all listed in the applicable earlier version of section 981 as offenses which could justify forfeiture. *See* 18 U.S.C. § 981 (1994). Money laundering is also included as one of the offenses that made, and continues to make, forfeiture possible under section 984. *See* 18 U.S.C. § 981 (1994 & 2002). We note that since the commencement of this action, however, Congress passed the Civil Asset Forfeiture Reform Act ("CAFRA"), Pub.L. 106–185, 114 Stat. 202 (2000), which, *inter alia*, amended 18 U.S.C. § 981 to include any act or activity constituting " 'specified unlawful activity,' (as defined in section 1956(c)(7) of this title)" as a sufficient offense to trigger forfeiture of guilty property that either constitutes the proceeds of, or is traceable to, such an offense. 18 U.S.C. § 981(a)(1)(C) (2003).

Thus, "offense[s] involving a Federal health care offense" are now included as predicates for forfeiture under section 981. 18 U.S.C. § 1956(c)(7)(F).

**3.** Section 981 provides for forfeiture of property which is either involved in an enumerated criminal offense or traceable to such offenses:

> [T]he following property ... is subject to forfeiture to the United States:
> (A) Any property, real or personal involved in a transaction or attempted transaction in violation of ... section 1956 ... of this title, or any property directly traceable to such property....
> (C) Any property which constitutes or is derived from proceeds traceable to a violation of ... section 1341 or 1343....

18 U.S.C. § 981.

**4.** Section 984 applies to forfeiture of fungible property, and in subsection (c) provides a one year statute of limitations for such property when it is "not traceable directly to the offense." 18 U.S.C. § 984(c)(2000). Like section 981, section 984 refers to 18 U.S.C. § 1956 (money laundering) as an offense that justifies forfeiture.

Cir.1999). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The district court's decision to grant summary judgment in this case turned on its application of a particular forfeiture statute and the applicable statute of limitations, which is a question of law and thus also is reviewed de novo. *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 514 (2d Cir.2001). However, "[w]e review the district court's ruling on equitable tolling for abuse of discretion." *Alli–Balogun v. United States*, 281 F.3d 362, 367–68 (2d Cir.2002); *see also Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir.1995). A discretionary ruling based on an error of law is necessarily an abuse of discretion. *See Monegasque De Reassurances S.A.M. v. Nak Naftogaz Of Ukraine*, 311 F.3d 488, 498 (2d Cir.2002).

## III.   DISCUSSION

The issue before us on appeal is whether the government's civil forfeiture proceeding against the allegedly tainted pension funds is time-barred. We hold that it was an error of law for the district court not to permit equitable tolling during the time that the government was prevented from filing successfully against the defendant funds by constraints on the alienation of pension funds imposed by the Employment Retirement Income Security Act of 1974

("ERISA"). *See* 29 U.S.C. §§ 1001–1168. As a result of our holding, the action may now proceed under section 984(c), and we need not resolve the parties' disagreement over whether section 981 and its five year statute of limitations could also govern this action.[5] Therefore, we do not reach the factual question of whether the funds may be traceable, thus allowing the government to bring the action under section 981, with its traceability requirements and five year statute of limitations. Further, we express no opinion on whether the government's forfeiture claim will ultimately succeed.

### A.   Equitable Tolling and Implications of ERISA

Generally, equitable tolling is difficult to attain, as it is reserved for "extraordinary or exceptional circumstances." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.2000). "Equitable tolling ... permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity," *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 223 (2d Cir.2002) (quoting *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir.2000)), even when the limitations period would otherwise have expired. "We have defined equitable tolling rules as those that allow a court 'under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order to prevent inequity.'" *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 223 (2d

---

**5.**   The government has argued that the defendant funds are traceable to the offenses of money laundering and fraud, and therefore section 981's five year statute of limitations—which the government further asserts it met—should apply. In opposition, the claimants urge that because the defendant funds are fungible, they are necessarily not traceable; *the government cannot meet the requirement of traceability and therefore forfeiture proceedings must be commenced within one year*

of the offense, as required by 18 U.S.C. § 984(c).

The district court agreed with claimants, holding that because the defendant property is fungible, the one year limitations period of section 984(c) governed. With the benefit of equitable tolling, however, the government may pursue its suit under section 984(c) regardless of whether the funds are traceable to a criminal offense.

Cir.2003) (citing *Asbestos Claimants v. U.S. Lines Reorganization Trust (In re U.S. Lines, Inc.)*, 318 F.3d 432, 436 (2d Cir.2003)). A party seeking to benefit from the doctrine bears the burden of proving that tolling is appropriate, *see Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir.2002), as "[e]quitable tolling requires a party to pass with reasonable diligence through the period it seeks to have tolled," *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir.1996). In this case, the question of whether equitable tolling should be granted implicates issues related to the nature of forfeiture proceedings and the protections ERISA affords to pension plans.

### 1. *Forfeiture Requires Seizure of the "Guilty" Property*

■ A civil forfeiture action is an in rem proceeding brought by the government as plaintiff asserting that "[a]ll right, title, and interest in [the defendant] property" has vested in "the United States upon commission of the act giving rise to forfeiture." 18 U.S.C. § 981(f). The suit is brought not against a person or corporation, but against defendant property that allegedly has been involved in criminal activity.[6] "It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient." *Waterloo Distilling Corp. v. United States*, 282 U.S. 577, 581, 51 S.Ct. 282, 75 L.Ed. 558 (1931) (distinguishing an in rem civil forfeiture proceeding from an in personam criminal proceeding against a defendant person). Unless otherwise provided by statute, civil forfeiture actions "shall conform as near as may be to proceedings in admiralty." 28 U.S.C. § 2461(b); *see also Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 84–87, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992).

■ When a forfeiture suit is commenced against personalty, the government must seize the defendant property. "In contrast to the *in personam* nature of criminal actions, actions *in rem* have traditionally been viewed as civil proceedings, with jurisdiction dependent upon seizure of a physical object." *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 363, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984) (citing *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 684, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974)); *see also Mattel, Inc. v. Barbie–Club.com*, 310 F.3d 293, 304 n. 13 (2d Cir.2002)(discussing "the venerable principle that *in rem* jurisdiction depends upon a court's initially ... having control of the physical *res*."). Therefore, if the defendant personal property cannot be seized, at least constructively, the forfeiture proceeding cannot move forward, because the court will not have jurisdiction.[7]

---

6. As Justice Thomas, writing for the majority, explained in *United States v. Bajakajian*, 524 U.S. 321, 330 n. 5, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (citation omitted):

   The "guilty property" theory behind *in rem* forfeiture can be traced to the Bible, which describes property being sacrificed to God as a means of atoning for an offense. In medieval Europe and at common law, this concept evolved into the law of deodand, in which offending property was condemned and confiscated by the church or the Crown in remediation for the harm it had caused.

7. Claimants cite *United States v. James Daniel Good Real Property*, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), for the proposition that seizure of the defendant funds prior to commencement of the forfeiture action was not necessary. However, in *James Daniel Good*, the Supreme Court considered whether immediate governmental seizure of a piece of real property—specifically, a person's home—was a necessary predicate to forfeiture jurisdiction and observed that "when the res is real property, rather than personal goods, the appropriate judicial forum may be deter-

■ The government argues that ERISA's anti-alienation provisions, *see* 29 U.S.C. § 1056(d)(1), prevented it from initiating the action to seize the defendant funds until the BR pension plan's dissolution had begun and disbursement of the funds was inevitable.[8] The government reasons that it was prevented from filing any earlier than the beginning of the disbursement process because, without the possibility of seizure, there could be no jurisdiction.[9] Therefore, in order to decide whether equitable tolling is appropriate, we must first examine the effect of ERISA on the government's ability to seize the defendant funds.

### 2. Alienation Restrictions of ERISA

■ As we have noted, "[i]n enacting ERISA, Congress clearly intended to protect workers' retirement benefits," *United States v. McCarthy*, 271 F.3d 387, 398 (2d Cir.2001), and the statute affords pension plans several unique protections. For example, it is well-established that under ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1),[10] pension benefits or funds may not be "assigned or alienated"

while the money is held by the plan administrator. *Robbins ex rel. Robbins v. De-Buono*, 218 F.3d 197, 203 (2d Cir.2000). "The anti-alienation provision can be seen to bespeak a pension law protective policy of special intensity: Retirement funds shall remain inviolate until retirement." *Boggs v. Boggs*, 520 U.S. 833, 851, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) (internal quotations omitted). A regulation outlining the tax implications of this statutory prohibition on assignment and alienation of undistributed ERISA plans' pensions states that "benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process." 26 C.F.R. § 1.401(a)–13(b) (2003).

■ Further, a future beneficiary's criminal bad acts have been found insufficient to override this prohibition. In *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), the Supreme Court reversed the imposition of a constructive trust on the undistributed pension benefits

---

mined without actual seizure." *Id.* at 57, 114 S.Ct. 492. Thus, *James Daniel Good* recognized an exception to the general rule requiring seizure, but that exception was for real property, and is therefore inapposite.

8. The court order authorizing seizure of the proceeds of the pension plans was issued in March of 1999 shortly after the government filed suit. Thus, the suit was commenced after the process of disbursing cash to the plan beneficiaries had begun, but before it had been completed. Because the proceeds were not released immediately, the seizure and lawsuit were delayed by several months, and did not move forward until release of the pension proceeds to the claimants' IRAs on August 19, 1999. Shortly thereafter, on September 1, 1999, those accounts were seized. *See United States v. Infelise*, 159 F.3d 300, 303–04 (7th Cir.1998)(IRA accounts not insulated by ERISA from forfeiture).

9. Claimants argue that the government waived the argument that equitable tolling applies in the instant case. We disagree. Although the government did not fully explicate in the district court the reason why it was unable to seize the funds until the IRAs were disbursed, it did argue that equitable tolling applies. Where a party fails to marshal factual evidence in support of its equitable tolling argument, we would be inclined to hold that it failed to bear its burden of persuasion that tolling should apply. *See Chapman*, 288 F.3d at 512. However, given that the district court abused its discretion in the instant case only in the sense that its ruling rests on a legal error, *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 498 (2d Cir.2002), we find that vacatur is appropriate.

10. Section 206(d)(1), 29 U.S.C. § 1056(d)(1), of ERISA states: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

allocated to a convicted embezzler. The trust had been imposed to benefit the wronged employer by returning some of the embezzler's ill-gotten gains:

> Nor do we think it appropriate to approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits. Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.

*Id.* Only once the proceeds of the pension plan have been released to the beneficiary's hands, can creditors and others pursue claims against the funds and the funds' owner(s).[11] *See Robbins,* 218 F.3d at 203.

■ Thus, until the BR pension plan funds were distributed to the plan beneficiaries, the government could not have made its forfeiture claim successfully. Ironically, it was the alleged money laundering offense of depositing the tainted funds into an ERISA pension plan that afforded the money protection from outside claims. As discussed above, until August of 1999, the defendant property in this case was held in BR's pension plan, and was in the hands of that plan's admin-

istrators. In August 1999, the property was distributed to the beneficiaries, and the pension proceeds earmarked for Edward and Rosemary Weiss were deposited into IRAs in their names at the North Fork Bank. The process of distributing the plan's assets began with the March 1999 filing of the intent to distribute, but it was not until the funds were actually released that the government could execute a warrant to arrest the funds.

■ The claimants assert that the government failed to pursue this forfeiture with sufficient diligence, and that notwithstanding ERISA, the government could have commenced its action in 1996, the time that the parties agree the government first learned of the pension funds and alleged money laundering offense.[12] We recognize that civil forfeiture is closely related to admiralty law, and "[i]t is settled that a suit may sometimes be brought in admiralty before the cause of action accrues." *The Lassell,* 193 F. 539, 543 (E.D.Pa.1912); *see also Patricia Hayes Assoc., Inc. v. Cammell Laird Holdings U.K.,* 339 F.3d 76, 82–83 (2d Cir.2003) (noting that "a district court *may* in some circumstances disregard the prematurity of a plaintiff's claim as a matter of discretion"); *Greenwich Marine, Inc. v. S.S. Alexandra,* 339 F.2d 901, 905 (2d Cir.1965) (stating that it is within a district court's "inherent power" when sitting in admiralty "to disregard the prematurity of plaintiff's

---

**11.** Relying on *Republic Nat'l Bank of Miami,* claimants argue that the court could have established constructive control over the defendant funds, and thus gained in rem jurisdiction. *See* 506 U.S. at 87, 113 S.Ct. 554 ("[A] court must have actual or constructive control of the res when an *in rem* forfeiture suit is initiated."). *Republic* did not involve ERISA funds, which, as the Court established in *Guidry,* may not be subject to a constructive trust for purposes of establishing jurisdiction for a forfeiture proceeding. *See Guidry,*

493 U.S. at 376, 110 S.Ct. 680; *see also, Boggs,* 520 U.S. at 851, 117 S.Ct. 1754 ("[The] anti-alienation provision is mandatory and contains only two explicit exceptions ... which are not subject to judicial expansion.").

**12.** Even accepting the claimants' premise that such filing would be possible, the government would still have needed to seek equitable tolling to proceed under section 984, since the statute runs from the date of the offense.

claim"). However, while a district court may in some circumstances exercise its discretion to disregard the prematurity of a plaintiff's claim, such a "prematurity objection has been ignored only in isolated situations under peculiar factual circumstances." *Greenwich Marine, Inc.*, 339 F.2d at 905. Before formal notice was filed indicating that the pension plans would be liquidated, there was no basis to allow a premature claim to proceed against funds which could not be touched, and would remain untouchable for the foreseeable future. It is technically correct that the government could have initiated a quixotic forfeiture action in 1996. However, because the defendant property could not have been seized in the foreseeable future, it likely would have been an abuse of discretion for a court to have allowed the action to proceed.

But once the distribution process had begun, the situation changed, as the government found when it filed suit. Although the funds were not yet distributed, the district court nonetheless proceeded to issue a warrant for their arrest, even though actual execution of the warrant still had to wait.

It would be inequitable to bar the government from proceeding against the funds in this suit simply because the claimants invested their ill-gotten gains in a pension plan. Such a decision would encourage criminals to engage in extensive retirement planning by effectively laundering their criminal proceeds through ERISA-protected pension plans. An enterprising wrongdoer could invest his proceeds in a pension plan, thereby starting the statute of limitations clock and ERISA would then safeguard the criminal proceeds until the forfeiture statute of limitations had run, at which point the criminal beneficiary could commence distribution without any risk of possible civil forfeiture. Although in rem forfeitures have specialized requirements, as do pension plans, their convergence should not require the government to overcome insurmountable legal obstacles such as lack of jurisdiction, or enable criminals to evade forfeiture.

As the government correctly contends, until the termination of the pension plan was filed with the Pension Benefits Guarantee Corporation in November 1998, the defendant funds were untouchable. Assuming that the government can show that BR's deposits into the pension plan constituted money laundering, we hold that equitable tolling from the date of such offenses, until the time the pension plan termination papers were filed, is available and appropriate. As a result, the action is not time-barred, and the district court's grant of summary judgment was in error.

### B. *Applicable Civil Forfeiture Statute*

In light of our decision regarding equitable tolling, the government may now proceed under 18 U.S.C. § 984(c), with its one year statute of limitations and lack of traceability requirements.[13] We express

---

**13.** In contrast to traditional in rem forfeitures where the defendant property must be either directly involved in, or traceable to, the predicate crime, section 984 provides that when the "guilty" property is fungible, the government may seize replacement property:

> In any forfeiture action in rem in which the subject property is cash, monetary interests in bearer form, funds deposited in an account ..., or other fungible property—(A) it

shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and (B) it shall not be a defense that the property involved in such offense has been removed and replaced by identical property.

18 U.S.C. § 984(b)(1) (2000). As we wrote in *Marine Midland Bank, N.A. v. United States*, 11 F.3d 1119, 1126 (2d Cir.1993), "[t]he en-

no opinion about (1) whether this defendant property may or may not be traceable to a criminal offense or (2) whether as a result, section 981(a)(1)(A) might apply here.

As we have outlined, in view of the effect of certain ERISA provisions on the government's ability to seize the defendant funds in this case, the district court abused its discretion when it failed to recognize equitable tolling until the date the pension plan's termination notice was filed. Because such tolling should have been recognized, the government's filing is timely under section 984.

### III. CONCLUSION

For the reasons set forth above, the judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

actment of § 984 was intended to lessen the government's burden of proof in forfeiture proceedings against fungible property." *See also United States v. $8,221,877.16 in United States Currency,* 330 F.3d 141, 158 (3d Cir. 2003) ("Section 984 is a 'substitute asset provision' enacted to overcome ... tracing difficulties and ease the government's burden of proof in civil forfeiture proceedings involving fungible property.").