07-4354-cv
Jacobs v. New York Foundling Hospital

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: August 27, 2008                           Decided: August 11, 2009)

Docket No. 07-4354-cv

_____

LINDA JACOBS, WENDY SLAUGHTER, and KENNETH BROWN, individually and on
behalf of all others similarly situated,

*Plaintiffs-Appellants*,

– v. –

NEW YORK FOUNDLING HOSPITAL,

*Defendant-Appellee.*

_____

Before NEWMAN and CALABRESI, *Circuit Judges*.[*]

_____

Appellants appeal from an April 16, 2007 judgment of the United States District Court for
the Eastern District of New York (Azrack, M.J.) granting, *inter alia*, appellee's motion for summary
judgment and dismissing appellants' claim that they were unlawfully denied overtime pay in
violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 207(a)(1). Appellants contend
appellee is an "enterprise" obligated to pay overtime because certain contractual and regulatory
relations render its activities "in connection with the activities of a public agency" pursuant to §
203(r)(2)(C) and thus "performed for a business purpose." We disagree and affirm the judgment.

> Jonathan A. Bernstein, Levy Davis & Maher, LLP,
> New York, N.Y., *for Plaintiffs-Appellants.*
>
> Stephen J. Macri, New York, N.Y. (Alexander Soric,
> Joseph B. Cartafalsa, Putney, Twombly, Hall &
> Hirson LLP, New York, N.Y., on the brief) for
> *Defendant-Appellee.*

---

[*]The Honorable Sonia Sotomayor, originally a member of the panel, was elevated to the
Supreme Court on August 8, 2009. The two remaining members of the panel, who are in agreement,
have determined the matter. *See* 28 U.S.C. § 46(d); 2d Cir. R. § 0.14(2); *United States v. DeSimone*,
140 F.3d 457 (2d Cir. 1998).

*Per Curiam*:

Appellants Linda Jacobs, Wendy Slaughter, Kenneth Brown, and the remainder of the class are former employees ("Employees") of the Foster and Boarding Home Programs operated by appellee New York Foundling Hospital ("Foundling"). All allege that they were not compensated properly for overtime work, in violation of the Fair Labor Standards Act of 1938 ("FLSA" or "Act"), 29 U.S.C. § 201–219, and appeal from an April 16, 2007 judgment of the United States District Court for the Eastern District of New York (Azrack, M.J.)[1] granting Foundling's motion for summary judgment and dismissing the Employees' claim for premium pay.

On appeal, the Employees contend that Foundling, a private, non-profit, independent contractor, is an "enterprise" under 29 U.S.C. § 203(r)(1) because its contractual and regulatory relations with the New York City Administration for Children's Services ("ACS") render its activities "in connection with the activities of a public agency" pursuant to 29 U.S.C. § 203(r)(2)(C) and thus "performed for a business purpose." Accordingly, the Employees claim, Foundling owes them overtime pay under the Act. Because we conclude that the Act's definition of "enterprise" does not extend to a private, non-profit, independent contractor associated by regulation and contract with a public agency, Foundling is not obligated to pay overtime under the Act. We therefore affirm.

## BACKGROUND

I. New York Foundling Hospital

New York Foundling Hospital is a private, charitable provider of social services to children and families in the New York City area. Founded in 1869 by a Catholic religious order as a home

---

[1]Pursuant to 28 U.S.C. § 636(c), the parties consented to have United States Magistrate Judge Azrack preside over the case for all purposes including entry of judgment.

for abandoned children, today its services include foster care, adoption, and physical and mental health initiatives.

All of the children served through Foundling's Foster Home and Boarding Home Programs are referred by ACS, which is responsible for administering New York City's child welfare services and is authorized to contract with private providers like Foundling under New York Social Services Law § 423(2). The Foster Home Program deals with approximately 150 abused or neglected children without special needs who have been removed from their biological families and placed with foster parents. The Boarding Home Program serves the same category of children who could not have or have not yet been placed with foster parents. Foundling's funding is derived exclusively from charitable grants and other federal, state, and local government sources. Almost half of its total revenue originates as payments from ACS.

The relationship between ACS and Foundling is set forth in a number of agreements premised upon Foundling's status as an independent contractor and, in turn, the entities' operational independence. The contracts provide that Foundling's "executive staff shall manage its affairs and programs and shall have the responsibility for the day-to-day provision of Services to and for each child placed with it." Foundling "alone is responsible for . . . [the] work, direction, compensation and personal conduct" of its employees, as well as for their recruiting, screening, and training. Foundling can unilaterally terminate the agreements, in whole or in part, with thirty days notice.

ACS exercises no control over Foundling's Board of Directors, structure, finances and governance, except to the extent that it retains some degree of oversight over Foundling's programs and client relations. The Foster Care Agreement, for instance, requires Foundling to "recruit a sufficient number and variety of prospective foster parents" to meet the level ACS calculates is

appropriate for a targeted area. Foundling must generally accept all ACS-referred children, establish grievance procedures for its service recipients with decisions appealable to ACS, and allow ACS to monitor and review all of its "program activities, procedures[] [and] records . . . as ACS deems necessary . . . including, at reasonable times, unannounced and unscheduled visits" to Foundling's offices and to its clients.

II. Procedural History

On March 3, 2004, the named Employees commenced an action against Foundling to recover unpaid overtime pay. The named Employees contended such payment was required under the FLSA because, 1) Foundling was an enterprise engaged in commerce (the "enterprise coverage claim"), or, alternatively, 2) Foundling's individual employees were engaged in commerce (the "individual coverage claim"). The named Employees also asserted an overtime claim based on New York state labor law. On December 13, 2004, the named Employees moved to certify a class action and authorize notice to those similarly situated. The motion was granted on December 23, 2004.

On September 15, 2006, the Employees made a motion for partial summary judgment on the FLSA enterprise claim, which Foundling opposed and responded to with a cross motion for partial summary judgment on the same claim on September 19, 2006. On April 16, 2007, the district court denied the Employees' motion for partial summary judgment, dismissing the enterprise coverage claim. The court also dismissed the state labor law claim without prejudice, but allowed the Employees to continue with the individual coverage claim as a class action. The court granted Foundling's motion for partial summary judgment relating to the enterprise coverage claim. On September 12, 2007, at the Employees' request, the district court entered an order dismissing the entire action with prejudice pursuant to Federal Rule of Civil Procedure 41(a).

-4-

Only the enterprise coverage claim is presently on appeal. To aid our analysis, on September 8, 2008, we solicited the views of the United States Department of Labor ("Department"), and on December 16, 2008, the Department submitted its response.

DISCUSSION

I. Analysis

The FLSA requires that employers pay a premium or overtime wage of "not less than one and one-half times the regular rate" for hours worked in excess of forty hours in a single work-week if an employee either: 1) "is engaged in commerce or in the production of goods for commerce," or 2) "is employed in an *enterprise* engaged in commerce or in the production of goods for commerce."[2] 29 U.S.C. § 207(a)(1) (emphasis added). The two categories are commonly referred to as "individual" and "enterprise" coverage, respectively. *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985) ("Prior to the introduction of enterprise coverage in 1961, the only individuals covered under the Act were those engaged directly in interstate commerce . . . Enterprise coverage substantially broadened the scope of the Act to include any employee of an enterprise engaged in interstate commerce, as defined by the Act.")

The FLSA defines an "enterprise," *inter alia*, as "the related activities performed . . . by any person or persons for a common business purpose . . . [excluding] the related activities performed

_____

[2]The FLSA was passed to help "correct" and "eliminate," 29 U.S.C. § 202(b), "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being." *Id.* § 202(a). In turn, courts construe the FLSA "liberally to apply to the furthest reaches consistent with congressional direction." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (citing *Mitchell v. Lublin, McGaughy & Assocs.,* 358 U.S. 207, 211 (1959)).

for such an enterprise by an independent contractor." § 203(r)(1).[3] Generally, non-profit organizations that do not "engage in ordinary commercial activities," *Tony & Susan Alamo Found.*, 471 U.S. at 297 (quoting 29 C.F.R. § 779.214 (1984)), or "serve the general public in competition with ordinary commercial enterprises," *id.* at 299, operate without a "business purpose" and therefore are not enterprises. *See* § 203(r)(1). *See also* U.S. Department of Labor, Wage and Hour Division, Opinion Letter FLSA2005-8NA, 2005 WL 5419044 (Sept. 2, 2005) (private nonprofit children's care facility not a FLSA enterprise); U.S. Department of Labor, Wage and Hour Division, Opinion Letter FLSA2004-30NA, 2004 WL 5303058 (Dec. 13, 2004) (private nonprofit foster home not a FLSA enterprise). The FLSA, however, ensures that certain types of entities that might otherwise be held

---

[3]As set forth fully in 29 U.S.C. § 203(r)(1), "enterprise" is defined as:

> [T]he related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor. Within the meaning of this subsection, a retail or service establishment which is under independent ownership shall not be deemed to be so operated or controlled as to be other than a separate and distinct enterprise by reason of any arrangement, which includes, but is not necessarily limited to, an agreement, (A) that it will sell, or sell only, certain goods specified by a particular manufacturer, distributor, or advertiser, or (B) that it will join with other such establishments in the same industry for the purpose of collective purchasing, or (C) that it will have the exclusive right to sell the goods or use the brand name of a manufacturer, distributor, or advertiser within a specified area, or by reason of the fact that it occupies premises leased to it by a person who also leases premises to other retail or service establishments.

29 U.S.C. § 203(r)(1).

to operate with a business purpose under the Act are nevertheless brought within its ambit. For example, under § 203(r)(2)(A) and (B), Congress expressly included within the definition of enterprise "the activities performed . . . in connection with" hospitals, institutions providing residential care to the sick, aged, or mentally ill, certain types of schools, and certain types of railway or other transportation providers. Congress deemed all of these entities operated "for a business purpose" whether they were public or private, or operated for profit or not for profit. *See* 29 U.S.C. § 203(r)(2).[4]

Moreover, through a series of amendments dating back to 1961, Congress broadened the FLSA's scope to extend its coverage to nearly all federal, state, and local government employees. *See Nat'l League of Cities v. Usery*, 426 U.S. 833, 837–38 (1976) (detailing the history of the FLSA

---

[4]Specifically, 29 U.S.C. § 203(r)(2) provides that:

> [T]he activities performed by any person or persons—
>
> (A) in connection with the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit), or
>
> (B) in connection with the operation of a street, suburban or interurban electric railway, or local trolley or motorbus carrier, if the rates and services of such railway or carrier are subject to regulation by a State or local agency (regardless of whether or not such railway or carrier is public or private or operated for profit or not for profit), or
>
> (C) in connection with the activities of a public agency,
> shall be deemed to be activities performed for a business purpose.

29 U.S.C. § 203(r)(2).

amendments) *overruled on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985). The amendments changed the Act's definition of a "public agency," 29 U.S.C. § 203(x), clarified which persons working for a public agency are covered, *id.* § 203(e), and included public agencies in the Act's definition of an "employer," *id.* § 203(d). *See* Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, sec. 6 § 3(d), (e), and (x), 88 Stat. 55, 58–60. Further, the amendments deemed "activities performed by any person or persons . . . in connection with the activities of a public agency" to be for a business purpose, again expanding the Act's definition of an enterprise. 29 U.S.C. § 203(r)(2)(C).

In this case, the parties do not dispute that Foundling is not a hospital, school, or any other type of institution listed under § 203(r)(2)(A), nor an actual municipal public agency under § 203(r)(2)(C). At issue, rather, is the meaning of the phrase "in connection with" as applied to "the activities of a public agency" in § 203(r)(2)(C).[5]

The Employees argue that because "in connection with" is unambiguous, it must be given its plain meaning, which they submit, as gleaned from two dictionaries, is "together with; in conjunction with; with reference to."[6] *See United States v. Santos*, 541 F.3d 63, 67 (2d Cir. 2008)

---

[5]Although the FLSA offers an extensive list of defined terms, "in connection with" is not included. *See* § 203. The exact phrase has not been construed or interpreted by a state or federal court, and prior to the briefing requested in this case, the DOL had not issued a regulation or opinion letter on point. *But cf. Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,* 547 U.S. 71, 85–86 (2006) (interpreting the phrase "in connection with the purchase or sale of any security" in the Securities Litigation Uniform Standards Act).

[6]The Employees also make an independent claim that Foundling is an enterprise because it competes in the market-place with "ordinary commercial enterprises" *Tony & Susan Alamo Found.*, 471 U.S. at 299. Foundling's only purported competitor, however, is ACS, the agency that supplies Foundling with its very clients and funding. We fail to see how such a relationship could therefore constitute "competition" or how Foundling's exclusion from the FLSA foments the "kind of unfair method of competition that the Act was intended to prevent." *Id.* (internal quotation marks and

("When a court determines that the language of a statute is unambiguous, its inquiry is complete."). Because of the statutory and regulatory scheme regulating the relationship between ACS and Foundling, as well as the contracts that delineate this interaction more specifically, the Employees contend that Foundling acts "together with," "in conjunction with," and, indeed, "in connection with" the activities of ACS, an uncontested public agency. In turn, the Employees argue, Foundling, a private, non-profit independent contractor, exists "for a business purpose" and is thus required to pay overtime to its employees as an "enterprise" under § 203(r)(1).[7]

Although the Employees are correct that the plain language of a statute is controlling, *Cervantes-Ascencio v. INS*, 326 F.3d 83, 86 (2d Cir. 2003), plainness or ambiguity is appropriately "determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc.*, 191 F.3d 198, 204 (2d Cir. 1999) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). In its specific and broader statutory context, we conclude § 203(r)(2)(C) is ambiguous. Section § 203(r)(1) expressly defines "enterprise" to exclude independent contractors. Having conceded before us that Foundling is an independent contractor, the Employees cannot now argue that the plain

citation omitted).

[7]We note that the existence of FLSA enterprise coverage is a two-step determination, and the Employees must ultimately prove both steps. That is, an employer must not only be an "enterprise" under § 203(r)(1), it must also be an "[e]nterprise engaged in commerce or in the production of goods for commerce" as defined in § 203(s). The latter requirement is rarely difficult to establish, however, because it is met by showing that two or more employees have "handl[ed] . . . materials that have been moved in . . . commerce[.]" 29 U.S.C. § 203(s)(1)(A)(i); *see, e.g., Wirtz v. Melos Constr. Corp.*, 408 F.2d 626, 628 (2d Cir. 1969) (finding that "handling" includes dealing in goods consumed locally in the employer's business); *Archie v. Grand Cent. P'ship*, 997 F.Supp. 504, 530 (S.D.N.Y. 1998) (highlighting the ease with which the second step is satisfied under § 203(s), "lead[ing] to the result that virtually every enterprise in the nation . . . is covered by the FLSA" (quoting *Dunlop v. Indus. Amer. Corp.*, 516 F.2d 498, 501-02 (5th Cir. 1975)).

meaning of § 203(r)(2)(C) proves Foundling is an enterprise, because that conclusion creates an obvious tension with the Act's very definition of enterprise.

In fact, the central fallacy of the Employees' argument is exposed by the independent contractor exemption. To the extent that the phrase "in connection with" in § 203(r)(2)(C) includes independent contractors in any regard, the portion of § 203(r)(1)'s definition of enterprise that broadly and expressly bars independent contractors from being classified as such is left meaningless, nullified, or void.[8] It is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). We credit that principle in this case.

Given such ambiguity and the troubling flaw in the Employees' interpretation of § 203(r)(2)(C), we consider the Department's views on the language in question and examine its position for persuasive value. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (stating that agency interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its

---

[8]During oral argument the Employees alternatively proposed that the independent contractor exemption in § 203(r)(1) applies only to contractors working with enterprises not specifically listed in § 203(r)(2)(C). This interpretation still renders much of the exemption meaningless, and if Congress had intended to carve out such a large exception to the exemption it could and should have done so explicitly in § 203(r)(2)(C). *See O & G Indus., v. Nat'l R.R. Passenger Corp.*, 537 F.3d 153, 161 (2d Cir. 2008) ("[I]f Congress intended [a statute] to apply only to [certain] claims, it would have included such qualifying language in the definition of the term 'claims.'"). *Spielman v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 332 F.3d 116, 127 (2d Cir. 2003) ("It is not our place as jurists to supply that which is omitted by the legislature.").

consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."). As relevant to this case, the Department concluded that:

"[T]he phrase 'in connection with the activities of a public agency' means activities performed by a public agency, not activities performed by a private nonprofit organization providing services to a public agency."

Dep't of Labor Br. 3.

Analysis of the Act offers significant support to the Department's position, and we therefore find it persuasive. First, as previously noted, absent special circumstances inapplicable to Foundling, non-profit organizations do not operate for a business purpose and are not enterprises. *See Tony & Susan Alamo Found.*, 471 U.S. at 297, 299. In § 203(r)(2)(A), (B), and (C), however, Congress singled out specific non-profits (i.e., medical, certain educational and transportation facilities, and public agencies) that are to be deemed enterprises nonetheless. The Employees concede that entities like Foundling—charitable independent contractors that support neglected children—are not included in this list, and they offer nothing other than their problematic plain language approach to § 203(r)(2)(C) to suggest that Congress intended such organizations to be engrafted onto the existing exceptions when they contract with a public agency. *See Greene v. United States*, 79 F.3d 1348, 1355 (2d Cir. 1996) ("The ancient maxim *expressio unius est exclusio alterius* (mention of one impliedly excludes others) cautions us against engrafting an additional exception to what is an already complex [statute].").

Second, § 203(r)(2)(A) and (B) end in parentheticals stating that the entities enumerated therein—hospitals, certain schools, certain common carriers, etc.—are covered "regardless of whether or not such [entities are] operated for profit or not for profit." Section 203(r)(2)(C) lacks this parenthetical. If the "in connection with" phrase in § 203(r)(2)(C) were intended to cover

private, third-party entities that contract with the government, the parenthetical would have been critical to include in the section because public agencies themselves—unlike schools and hospitals—are by definition solely public and non-profit. Its absence adds weight to the Department's conclusion that § 203(r)(2)(C) encompasses only the public "activities performed by a public agency," not the private acts of independent contractor organizations associated with an agency through contract and regulation, like Foundling.

Third, by limiting § 203(r)(2)(C) to "activities performed by a public agency," the Department's reading avoids the absurd result that follows from the Employees' contrary interpretation. *See United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000) ("A statute should be interpreted in a way that avoids absurd results."). Ultimately, the Act applies to Foundling only if it qualifies both as an "enterprise" under § 203® and as an "enterprise engaged in commerce" under § 203(s). Section 203(s) defines an "enterprise engaged in commerce" as an "enterprise that . . . is an activity *of* a public agency." § 203(s)(1)(C) (emphasis added). Because "of" is a word used to indicate belonging or a possessive relationship, the Department points out that "Foundling's activities are not the activities *of* ACS, even assuming it operates *in connection with* ACS." *See Powell v. Tucson Air Museum Found.*, 771 F.2d 1309, 1312 (9th Cir. 1985) ("Because the Museum is a private corporation which is an independent contractor of Pima County, it is not an 'activity of a public agency' . . . and thus is not subject to the requirements of the FLSA.").

Thus, § 203(r)(2)(C) and § 203(s)(1)(C) operate in tandem, and if the former is interpreted to encompass a third-party, private, independent contractor somehow associated with an agency, the Act still would not apply to that third-party because the "in connection with" phrase is missing from the latter. The Employees' notion that § 203(r)(2)(C) includes Foundling while § 203(s)(1)(C)

-12-

excludes Foundling is a result we are compelled to avoid. The Department's interpretation of §

203(r)(2)(C), in contrast, allows the two sections to be read seamlessly: the "activities performed by

a public agency" comports with both the activities "in connection with" a public agency and the

activities "of" a public agency.

To the extent that § 203(r)(2)(C)'s meaning remains unresolved after we have considered the

section in its surrounding statutory context, we may turn to legislative history for clarification. *Lee*

*v. Bankers Trust Co.,* 166 F.3d 540, 544 (2d Cir. 1999). To this end, the Department points out that:

> [w]hile nothing in the legislative history specifically addresses the phrase "in connection with the activities of a public agency" in Section 203(r)(2)(C), the legislative history is replete with statements that the amendments were meant to extend FLSA coverage to federal, state, and local government employees. There is, by contrast, no indication that Congress intended to extend enterprise coverage to employees of nonprofit entities that provide services to a public agency.

Dep't of Labor Br. 7.

Because the Employees concede that legislative history offers no support for their position,

and the district court's own thorough analysis "reveal[ed] no mention of an intent to extend

enterprise coverage to non-profits that act in conjunction with . . . agencies," *Jacobs v. N.Y.*

*Foundling Hosp.*, 483 F. Supp. 251, 261 (E.D.N.Y. 2007), legislative history further buttresses the

Department's view that "in connection with the activities of a public agency" means activities

performed by a public agency and not those performed by private independent contractors providing

services to that agency.

Finally, we note that through regulation, opinion letter, and other statements, the Department

has consistently interpreted § 203(r)(2)(C) to apply the FLSA's overtime provisions only to public

-13-

agencies, not to private independent contractors dealing with such agencies.[9] This interpretation has stood for almost 35 years, and deeming the various independent contractors retained by public agencies enterprises might have unanticipated and uncertain consequences. We agree with the Department that, under these circumstances, carving a hole in the Act's unequivocal exemption of independent contractors is a policy judgment best left to the legislative branch. *See, e.g., United States v. All Funds Dist. to, ex rel., Weiss*, 345 F.3d 49, 57 (2d Cir. 2003) (stating that where a section of the Employee Retirement Income Security Act of 1974 "'reflects a considered congressional policy choice . . . [i]f exceptions to this policy are to be made, it is for Congress to undertake that task'") (quoting *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376 (1990)).

The Act's language, structure, legislative history, and policy concerns all support the Department's interpretation of § 203(r)(2)(C). The Employees' alternative approach requires "in connection with" to be deemed unambiguous, even though the meaning they supply voids and conflicts with an integral portion of the Act's actual definition of "enterprise," the independent contractor exemption.

Thus, we adopt the Department's position and take § 203(r)(2)(C) to mean the activities performed by a public agency, not the activities performed by a private, non-profit independent contractor providing services to a public agency. Therefore, § 203(r)(2)(C) is inapplicable to Foundling, and the Employees are not entitled to overtime pay.

---

[9]As we have noted, *see* Note 5, *supra*, the exact phrase "in connection with" had not been the subject of formal or informal agency interpretation prior to the DOL briefing that we requested in this case.

CONCLUSION

For the reasons discussed, we AFFIRM the judgment of the district court.