RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

IN RE: DEPUY ORTHOPAEDICS, INC. ASR HIP IMPLANT PRODUCTS LIABILITY LITIGATION.

LINDA BOAL and DAVID BOAL (19-3494); CAROLINA BURROWS and COLIN M. BURROWS (19-3501); GWYNETH A. CASTANEDA (19-3503); MARGARET E. COLEMAN (19-3504); NORMA COURAGE and THOMAS G. COURAGE (19-3505); TERENCE CRANMER and AUDREY CRANMER (19-3506); EDNA J. EVANS (19-3507); DIANA C. HEDLEY and MALCOLM S. HEDLEY (19-3508); BRIAN HOLLOWELL and LYDIA HOLLOWELL (19-3510); GAY SEARLES (19-3511); WILLIAM A. STEPHENSON and CHRISTINE STEPHENSON (19-3512); JOSE A. VINUALES VILLAR (19-3513),

> Nos. 19-3494/3501/3503/3504/3505/3506/3507/3508/3510/3511/3512/3513

*Plaintiffs-Appellants*,

*v.*

DEPUY ORTHOPAEDICS, INC.; DEPUY INC.; DEPUY INTERNATIONAL LIMITED; JOHNSON & JOHNSON; JOHNSON & JOHNSON SERVICES, INC.; JOHNSON & JOHNSON INTERNATIONAL,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:10-md-02197—Jeffrey James Helmick, District Judge.

Argued: February 5, 2020

Decided and Filed: March 27, 2020

Before: BATCHELDER, LARSEN, and MURPHY, Circuit Judges.

---

**COUNSEL**

---

**ARGUED:** E. Aaron Sprague, CREED & GOWDY, P.A., Jacksonville, Florida, for Appellants. Benjamin C. Sassé, TUCKER ELLIS LLP, Cleveland, Ohio, for Appellees. **ON BRIEF:** Jeffrey L. Haberman, SCHLESINGER LAW OFFICES, P.A., Fort Lauderdale, Florida, for Appellants. Benjamin C. Sassé, Kristen L. Mayer, TUCKER ELLIS LLP, Cleveland, Ohio, for Appellees.

---

**OPINION**

---

MURPHY, Circuit Judge. The twelve cases consolidated in this appeal serve as yet another reminder that it "behooves parties to be meticulous in jurisdictional matters." *Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 765 (6th Cir. 2019). "For some 200 years it has been the rule that—no matter the time and resources spent—an appellate court must wipe out everything that has occurred if the lower court lacked jurisdiction." *Id.* at 764–65. Here, even though nearly eight years have passed since the plaintiffs sued, all now recognize that the district court lacked diversity jurisdiction from the start. We thus vacate the district court's judgments.

I

Since 2010, the District Court for the Northern District of Ohio has been the home of multidistrict litigation involving the DePuy ASR XL Acetabular Hip System, a medical device used in hip-replacement surgeries. Plaintiffs in this complex litigation have generally asserted that this device was defective and that the defendants gave inadequate warnings about its risks. At its peak, the multidistrict litigation contained over 8,500 cases with over 12,000 plaintiffs. Residents of the United States litigated most of these cases. In late 2013, the defendants entered into a broad settlement agreement with this group of plaintiffs. The district court has since implemented the agreement and appointed an administrator to process thousands of claims.

Foreign plaintiffs, by contrast, brought the twelve suits at issue in this appeal. In 2012, they filed "short-form" complaints in Ohio in the district court overseeing the multidistrict litigation, an approach permitted by one of the court's general case-management orders. Each complaint alleged that a plaintiff had been implanted with the DePuy device during hip surgery in Spain. The spouses of several of these plaintiffs also joined the litigation. These plaintiffs sued the same six defendants: DePuy Orthopaedics, Inc.; DePuy, Inc.; DePuy International Limited; Johnson & Johnson; Johnson & Johnson Services, Inc.; and Johnson & Johnson International. The complaints did not identify the basis for the district court's subject-matter jurisdiction, but the civil cover sheets listed diversity jurisdiction under 28 U.S.C. § 1332. The complaints also alleged that the plaintiffs who had been implanted with the DePuy devices were Spanish residents and either Spanish or British citizens. They did not identify the defendants' citizenship.

In the district court, the defendants never disputed that diversity jurisdiction existed. Shortly after the suits were filed, they instead told the plaintiffs that they would move to dismiss the suits under the venue-like doctrine known as *forum non conveniens* (a Latin phrase meaning inconvenient forum). While the general multidistrict litigation progressed over the next several years, little happened in these specific suits. The plaintiffs simply provided some case-specific information as required by other case-management orders. In 2015, the defendants eventually followed through on their earlier notice by filing motions to dismiss based on *forum non conveniens*.

The district court granted the motions. It issued twelve similar opinions dismissing these cases because Spain provided the better forum. The court reasoned that the plaintiffs were residents of Spain; that their hip-replacement surgeries and follow-up care had occurred there; that the case-specific evidence was located there; and that Spanish law likely applied. It also found that Spanish courts provided an adequate forum for the plaintiffs and that the defendants had not waited too long in filing their motions. The court nevertheless conditioned its dismissal of these suits on the defendants' submitting to the jurisdiction of a Spanish court, on their

waiving any limitations defenses, and on their satisfying any final judgments for the plaintiffs. The plaintiffs appealed.

II

Before argument, we asked the parties whether the district court had diversity jurisdiction. The plaintiffs have since called this jurisdictional issue a "technicality," noting that "[t]his was the first time the issue of subject matter jurisdiction" had been raised. We think it worthwhile to remind litigants that "[a] federal court's entertaining a case that is not within its subject matter jurisdiction is no mere technical violation[.]" 13 Charles Alan Wright et al., *Federal Practice and Procedure* § 3522, at 100–02 (3d ed. 2008). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). No one would call Article I's limits on Congress's legislative power legal "technicalities." Likewise, "[m]uch more than legal niceties are at stake" when courts exceed their jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). While the judiciary may be the "least dangerous" branch, *The Federalist* No. 78, at 464 (A. Hamilton) (Clinton Rossiter ed., 1961), it still has great power to affect people's lives. This point is perhaps more readily apparent in cases involving far-reaching constitutional questions. *See Hollingsworth v. Perry*, 570 U.S. 693, 704–05 (2013). But it has no less force in cases, like this one, where one party seeks to use government power to compel another party to give up its property. In any case, large or small, the exercise of the "judicial Power" by a court that has not been granted it "offends fundamental principles of separation of powers." *Steel Co.*, 523 U.S. at 94. For that reason, federal courts must catch jurisdictional defects at all stages of a case, even when substantial resources have already been invested in it. *Id.* at 94–95. Ordinarily, it is the plaintiff's burden to demonstrate that the court has jurisdiction. Hence, the first thing—not the last—that any potential federal plaintiff should ask itself is whether a federal court would have jurisdiction over a federal suit.

This case proves why. After eight years the parties now concede that the district court lacked diversity jurisdiction all along. Rightly so. Two provisions in 28 U.S.C. § 1332(a) give

district courts jurisdiction over civil actions that include foreign citizens and that seek more than $75,000. The first, § 1332(a)(2), grants jurisdiction over a civil action between "citizens of a State and citizens or subjects of a foreign state[.]" So if a Spanish citizen sued an Ohio citizen for more than $75,000, jurisdiction would exist under § 1332(a)(2). *See* 14A Charles Alan Wright et al., *Federal Practice and Procedure* § 3661, at 5 (2013); *see also* U.S. Const. art. III, § 2, cl. 1. The second, § 1332(a)(3), grants jurisdiction over a civil action between "citizens of different States" even when "citizens or subjects of a foreign state are additional parties[.]" So if an Ohio citizen sued both a Michigan citizen and a Spanish citizen for more than $75,000, jurisdiction would exist under § 1332(a)(3). Indeed, if citizens of different states are on both sides of a dispute, most courts hold that § 1332(a)(3) even permits foreign citizens to join as additional parties on both sides. *See* 14A Wright, *supra*, § 3661, at 13–14 & n.12; *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 245 (7th Cir. 2003).

What happens, though, if foreign citizens are on both sides of a dispute but a state citizen is on only one side (say, a Spanish plaintiff sues defendants from Ohio and the United Kingdom)? This fact pattern does not fit § 1332(a)(3) because citizens of different states do not fall on both sides (as in the example involving an Ohio citizen suing a Michigan citizen and a Spanish citizen). And it does not fit § 1332(a)(2) because we have read that provision to require "complete" diversity—meaning that only state citizens are on one side of the dispute and only foreign citizens are on the other (as in the example involving a Spanish plaintiff suing an Ohio defendant). *See U.S. Motors v. Gen. Motors Europe*, 551 F.3d 420, 422–24 (6th Cir. 2008); *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co. Ltd.*, 509 F.3d 271, 272–73 (6th Cir. 2007). For what it is worth, the other circuit courts to have addressed this issue agree with our complete-diversity reading of § 1332(a)(2). *See Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1364 (11th Cir. 2018) (citing cases); 14A Wright, *supra*, § 3661, at 16–17. Section 1332(a) thus does not give federal courts jurisdiction over this fact pattern.

That rule dooms diversity jurisdiction in these cases. The complaints allege that the plaintiffs who underwent hip surgeries are residents of Spain and citizens of either the United Kingdom or Spain. Yet at least one defendant—DePuy International—is incorporated in the

United Kingdom and has its principal place of business there. On these facts, the plaintiffs cannot satisfy § 1332(a)(2) or (a)(3). Section 1332(a)(2) will not work because citizens of foreign states fall on both sides of the dispute and so complete diversity is lacking. *Peninsula Asset Mgmt.*, 509 F.3d at 272–73. And § 1332(a)(3) will not work because citizens of different states do not fall on both sides. *Id.* at 273. While some other defendants are citizens of a state, the plaintiffs identify no state-citizen plaintiffs. (A few of the complaints fail to separately list the citizenship of a suing spouse, but the plaintiffs make no claim that any spouse is domiciled in a state so as potentially to trigger § 1332(a)(3).) The district court thus could not exercise diversity jurisdiction.

This conclusion would generally lead us to vacate the district court's judgment and direct it to consider dismissing the suits for lack of jurisdiction. *See id.*; *see also Steel Co.*, 523 U.S. at 94–95. The parties nonetheless offer two reasons why we may still consider the district court's *forum non conveniens* ruling. The plaintiffs cite a statute: 28 U.S.C. § 1653. The defendants cite a case: *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007).

Start with the statute: 28 U.S.C. § 1653. It says that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." *Id.* Two days before argument in this court, the plaintiffs moved to amend their complaints under § 1653. They sought to add a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312, which they argued would establish federal-question jurisdiction under 28 U.S.C. § 1331. The plaintiffs thus seek to create jurisdiction by amending their complaints to add a new federal claim. Section 1653's text and the caselaw interpreting it show that the statute does not permit this kind of amendment.

The statute's plain text allows parties to amend a complaint's "defective allegations of jurisdiction." 28 U.S.C. § 1653. For example, a plaintiff whose complaint relied on diversity jurisdiction may correct the complaint's accidental failure to list the state in which a corporate defendant has its principal place of business. *Prime Rate*, 930 F.3d at 765. But this text—which permits changes to insufficient allegations of *jurisdiction*—does not also cover a plaintiff's

attempt to amend substantive allegations on the *merits*. The text thus does not encompass the plaintiffs' motion in this case. Their motion seeks to create jurisdiction, not to confirm it.

Precedent supports this plain-text reading. The Supreme Court has held that § 1653 does not "empower federal courts to amend a complaint so as to produce jurisdiction where none actually existed before." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989). And several circuit courts have noted that parties may not "'substitute new causes of action' to allege federal question jurisdiction where other grounds for jurisdiction have been defeated." *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 585 (D.C. Cir. 1993) (quoting *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 512 (5th Cir. 1985)); *see Saxon Fibers, LLC v. Wood*, 118 F. App'x 750, 752 (4th Cir. 2005); *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 161 (2d Cir. 1998); *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380–81 & n.3 (9th Cir. 1988); *Brennan v. Univ. of Kan.*, 451 F.2d 1287, 1289 (10th Cir. 1971). In *Boelens*, for example, the plaintiffs sought to create federal-question jurisdiction by amending their complaints to reassert claims under the Magnuson-Moss Warranty Act that they had previously dropped. 759 F.2d at 512. The Fifth Circuit denied their request, reasoning that "the plaintiffs' motion to amend seeks not to remedy technically inadequate jurisdictional allegations, but rather to substitute new causes of action over which there would be jurisdiction." *Id.*; *see also Newman-Green*, 490 U.S. at 832 n.5 (citing *Boelens* approvingly). The same logic bars the plaintiffs' use of § 1653 in this case.

In response, the plaintiffs cite two of our own decisions approving amendments under § 1653. *See Miller v. Davis*, 507 F.2d 308, 310–11 (6th Cir. 1974); *Blanchard v. Terry & Wright, Inc.*, 331 F.2d 467, 468–69 (6th Cir. 1964). But these decisions allowed parties to change only the jurisdictional statute on which their complaints relied; they did not allow parties to change their substantive allegations. *See also AmSouth Bank v. Dale*, 386 F.3d 763, 779–80 (6th Cir. 2004). In *Miller*, Kentucky residents sued the trustees of a union's pension fund in federal court on the ground that a federal statute granted federal jurisdiction over suits against labor unions. 507 F.2d at 310–11. We held that this statute did not create federal jurisdiction but noted that the district court likely had diversity jurisdiction. *Id.* at 311. We thus allowed the

plaintiffs to amend their "defective allegations" concerning diversity "jurisdiction." 28 U.S.C. § 1653; *Miller*, 507 F.2d at 310–11. Likewise, in *Blanchard*, subcontractors relied on diversity jurisdiction to sue a contractor in federal court over work performed for the United States. 331 F.2d at 468. While diversity jurisdiction did not exist, the complaint's allegations also supported federal jurisdiction under a statute permitting federal litigation in cases involving construction work for the United States. *Id.* at 468–69. We thus allowed the plaintiffs to amend their complaint under § 1653 to rely on this other jurisdictional statute. *Id.* When doing so, we recognized that this amendment "did not change in any respect the substantive allegations setting forth plaintiffs' claim." *Id.* at 468.

Unlike the plaintiffs in *Miller* and *Blanchard*, the plaintiffs in this case seek to do more than simply switch from alleging diversity jurisdiction under § 1332 to alleging federal-question jurisdiction under § 1331. They also seek to amend the complaints' "substantive allegations" by expressly adding a claim under the Magnuson-Moss Warranty Act. *Id.* And their original complaints' brief factual allegations—that the plaintiffs were implanted with the DePuy device during surgery in Spain—could not be interpreted to have impliedly asserted this federal claim. *Cf. Eisler v. Stritzler*, 535 F.2d 148, 152 & n.3 (1st Cir. 1976). Indeed, it is not at all clear that such a claim would be legally cognizable. District courts, for example, have rejected arguments that medical devices qualify as "consumer products" covered by the Magnuson-Moss Warranty Act. 15 U.S.C. § 2301(1); *see, e.g.*, *Bates v. Monarch Dental Servs.*, 2019 WL 5067904, at *4 (N.D. Tex. Oct. 9, 2019); *In re Minn. Breast Implant Litig.*, 36 F. Supp. 2d 863, 876 (D. Minn. 1998). And plaintiffs cite no cases applying the act extraterritorially. *Cf. MY. P.I.I., LLC v. Tognum Am., Inc.*, 2016 WL 7626201, at *3–6 (S.D. Fla. Mar. 31, 2016). We need not resolve these legal questions now. This caselaw instead shows that the plaintiffs' request to add this claim should be taken for what it is: an attempt to amend their complaints' substantive allegations, not simply their jurisdictional allegations. Because § 1653 does not permit that type of amendment, we must reject the plaintiffs' motion to amend.

Now to the defendants' case: *Sinochem*. The defendants argue that we have discretion to affirm the district court despite its lack of jurisdiction because of the nature of the court's

judgment. The Supreme Court permits courts to "choose among threshold grounds for denying audience to a case on the merits." *Sinochem*, 549 U.S. at 431 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). A court thus may in some circumstances dismiss a suit based on a lack of personal jurisdiction without first resolving its subject-matter jurisdiction. *Ruhrgas*, 526 U.S. at 578. And *Sinochem* allows courts to "dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." 549 U.S. at 432. For two reasons, though, we decline to exercise any discretion that we may have to take this approach.

Reason One: *Sinochem* said that a court may immediately proceed to a *forum non conveniens* dismissal *only* if the court has not definitively decided that it lacks jurisdiction. The Court limited its holding in this way to distinguish a sentence in a prior decision stating that "the doctrine of *forum non conveniens* can never apply if there is absence of jurisdiction[.]" *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947). In response to *Gulf Oil*, *Sinochem* said that it was "of course true that once a court determines that jurisdiction is lacking, it can proceed no further and must dismiss the case on that account." 549 U.S. at 434. And "[i]n that scenario '*forum non conveniens* can never apply.'" *Id.* (quoting *Gulf Oil*, 330 U.S. at 504). But *Sinochem*'s facts did not fall within this rule because no court had definitively decided the difficult jurisdictional questions the case presented. *Id.* at 434–35. In today's cases, by contrast, we have "readily determine[d]" that we lack jurisdiction. *Id.* at 436. Unlike in *Sinochem*, where "subject-matter jurisdiction presented an issue of first impression" that mandated further discovery, *id.* at 435, both parties here concede that our precedent precludes diversity jurisdiction. So *Sinochem* likely does not permit us to jump to *forum non conveniens*.

Reason Two: *Sinochem* left open whether its rule would apply if the court dismissing a case on *forum non conveniens* grounds conditioned that dismissal "on the defendant's waiver of any statute of limitations defense or objection to the foreign forum's jurisdiction." *Id.* If a court does not initially ensure itself of its jurisdiction, how does the court have the power to preclude a defendant from raising these sorts of defenses? *See Steel Co.*, 523 U.S. at 94–95. And how

could a court enforce a defendant's breach of this type of condition if it later decided that it lacked jurisdiction? *Sinochem* had no occasion to consider these questions because the district court there had not issued its dismissal with any strings attached. 549 U.S. at 435. Here, however, the district court imposed several conditions on its dismissals, including that the defendants would waive any limitations defenses. Resolving this case on *forum non conveniens* grounds thus would require us to answer this threshold issue that *Sinochem* left open.

The answer is not obvious, and few courts have addressed it. Before *Sinochem*, two circuit decisions (including the decision that *Sinochem* reversed) had suggested that a court granting a conditional dismissal on *forum non conveniens* grounds would first have to decide its subject-matter jurisdiction. *See Malaysia Int'l Shipping Corp. v. Sinochem Int'l Co. Ltd.*, 436 F.3d 349, 363 & n.21 (3d Cir. 2006); *In re Papandreou*, 139 F.3d 247, 256 n.6 (D.C. Cir. 1998). As the D.C. Circuit put it, an exaction of a condition "would appear inescapably to constitute an exercise of jurisdiction." *Papandreou*, 139 F.3d at 256 n.6. After *Sinochem*, however, the Second Circuit has said it will approve these conditions without deciding jurisdiction "[u]ntil authoritatively advised that this practice is impermissible." *Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 394 n.12 (2d Cir. 2011). We think it best to leave this debate for another day, given that both parties concede that the district court lacked diversity jurisdiction.

We deny the plaintiffs' motion to amend their complaints, vacate the district court's orders conditionally dismissing these cases on *forum non conveniens* grounds, and remand for proceedings consistent with this opinion.